Raynell JONES, Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 86–141.

Supreme Court of Wyoming.

April 13, 1987.

Leonard D. Munker, State Public Defender, Julie D. Naylor, Appellate Counsel, Wyoming Public Defender Program, for appellant.

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., John W. Renneisen, Sr. Asst. Atty. Gen., Sylvia Lee Hackl, Asst. Atty. Gen., and Michael N. Patchen, Legal Intern, for appellee.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

THOMAS, Justice.

The only issue raised by this appeal is whether two questions asked the defendant

on cross-examination were permissible for purposes of impeachment. One question was whether the defendant had been convicted of a misdemeanor, credit card fraud. The other question related to an arrest for another misdemeanor, disturbing the peace. It was asked (according to the prosecutor) to lay a foundation for showing that the defendant had given a different address to the arresting officer from the one which she had testified to on direct examination. There was no error in asking the defendant about her conviction for credit card fraud. The question eliciting the fact of the arrest was improper, but the error was harmless in the context of this case. The judgment and sentence of the district court is affirmed.

Raynell Jones was convicted of the crime of attempted robbery in violation of §§ 6–1–301 and 6–2–401(a)(ii), W.S.1977 (June 1983 Replacement). Section 6–1–301, W.S.1977 (June 1983 Replacement), provides in pertinent part:

"(a) A person is guilty of an attempt to commit a crime if:

"(i) With the intent to commit the crime, he does any act which is a substantial step towards commission of the crime. A 'substantial step' is conduct which is strongly corroborative of the firmness of the person's intention to complete the commission of the crime; * * * "

Section 6–2–401(a)(ii), W.S.1977 (June 1983 Replacement), provides in pertinent part:

"(a) A person is guilty of robbery if in the course of committing a crime defined by W.S. 6–3–402 he:

"\*      \*      \*      \*      \*      \*

"(ii) Threatens another with or intentionally puts him in fear of immediate bodily injury."

Section 6–3–402, W.S.1977 (June 1983 Replacement), makes it a crime to steal the property of another. After the jury's verdict of guilty, the court ordered a presentence report, and Raynell Jones then was sentenced to a term of not less than three nor more than five years in the Wyoming Women's Correctional Center with appropriate credit given for presentence confine-

ment. She appeals from that judgment and sentence.

In the Brief of Appellant, the issue is said to be:

"Whether the trial court erred in allowing the prosecutor to question the defendant about prior misdemeanors."

The State of Wyoming in its Statement of Issues bifurcates the subject in this way:

"I. Does an isolated question from the prosecutor to the defendant about the defendant's misdemeanor arrest, used as the foundation for impeachment of the defendant's credibility and admitted by the trial judge, constitute reversible error?

"II. Is the question from the prosecutor to the defendant about the defendant's misdemeanor fraud conviction allowable under Rule 609(a)(ii), W.R.E.?"

Raynell Jones did not emphasize or strongly urge the matter of the conviction for credit card fraud in her brief or argument.

The victim of this crime was an 81–year old man who, while on his evening walk, was confronted by a woman who indicated to him that she had a firearm and demanded his money. The victim simply continued his walk whereupon words to the effect that he should stop or be shot were addressed to him. He continued on his way and attempted to report this incident to the manager of the apartment complex where he lived. No one was available, so he went to a friend's apartment and reported the incident. The friend described him as being shaky and nervous. The friend's daughter then went to the vicinity in which the victim said he had been accosted, and as she turned the corner of one of the buildings, she encountered a woman whom she knew to be Raynell Jones. She so testified at trial. In his trial testimony, the victim identified Raynell Jones as the person who attempted to rob him. Raynell Jones' defense was alibi which she substantiated by her testimony and that of two witnesses. The tenor of that testimony was that Raynell Jones was in Denver on the night of the robbery.

■ During the cross-examination of Raynell Jones by the prosecutor, the fol-

lowing questions were asked and the reported answers given:

"Q. Miss Jones, have you ever been convicted of any crime involving false statement and deceit?

"A. I don't even understand it, could you specify it more or whatever?

"Q. Isn't it true that in fact that you were convicted of credit card fraud a few years ago?

"A. No, it turned out to be a misdemeanor, and I did a year probation and paid back $500.

"Q. Yes, it was a misdemeanor, that is correct, but you were convicted of that?

"A. Well, yes, I guess, convicted, I don't know."

Defense counsel then objected to the information about this misdemeanor on the grounds that it was improper impeachment examination and prejudicial to Raynell Jones.

This aspect of the case appropriately is addressed under Rule 609, W.R.E., which provides in pertinent part as follows:

"(a) *General rule.*—For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime * * * (2) involved dishonesty or false statement, regardless of the punishment."

This rule was adopted from Rule 609, F.R.E., and consequently, the construction of the federal rule is persuasive authority with respect to the interpretation of this rule by our court. The legislative history relative to Rule 609, F.R.E., in the Congress of the United States reflects the debate with respect to the scope of crimes involving dishonesty or false statements. That legislative history indicates that the phrase "dishonesty or false statement" was intended to reach a very narrow subject of criminal activity "such as perjury or subornation of perjury, false statement, criminal fraud, embezzlement, or false pretense, or any other offense in the nature of crimen falsi, the commission of which involves some element of deceit, untruthful-

ness, or falsification bearing on the accused's propensity to testify truthfully." H.R.Conf.Rep. No. 93–1597, 93rd Cong., 2d Sess. 9 (1974), quoted from 3 D. Louisell and C. Mueller, Federal Evidence § 317 at 333 (1979). The crime of credit card fraud fits within that described category of offenses. See *United States v. Smith*, 179 U.S.App.D.C. 162, 551 F.2d 348, 39 A.L.R. Fed. 539 (1976); *State v. Malloy*, 131 Ariz. 125, 639 P.2d 315 (1981); and cases cited in Annot. 39 A.L.R.Fed. 520 (1978). We hold that the crime of credit card fraud clearly falls within those crimes involving dishonesty or false statement under Rule 609, W.R.E. See 3 D. Louisell and C. Mueller, Federal Evidence, supra, §§ 317 and 334–335 together with the cases cited.

The record discloses that just prior to the inquiry about the conviction of credit card fraud the following dialogue occurred between the prosecutor and Jones as part of her cross-examination:

"Q. What is the address of your mother's house?

"A. 934 North Jefferson.

"Q. How long have you been living there, I didn't catch that, at that time, how long had you been living there?

"A. At what time, in April?

"Q. In April how long had you been living there?

"A. Well, I been living there the whole month of April.

"Q. You were living there in March?

"A. Yes.

"Q. Isn't it in fact true that you were arrested by Officer Lord for disturbing the peace on March 29, 1985?

"A. I could have been."

Defense counsel then objected to the questioning and the reference to the arrest for disturbing the peace as being irrelevant and extremely prejudicial. The response of the prosecution was:

"Your Honor, if I may, the relevancy has to be connected as foundation for the next question on the booking forms that night she gave an address completely different than the one she says she was at, that is where the relevancy comes in,

merely laying foundation for that question."

The trial court overruled the objection and the next question and answer were:

"Q. Can you explain to me why on that date you gave the address of 324 East H Street, in Casper, Wyoming, if you were living with your mother?

"A. No law saying you can't live at two places at one time."

Jones urges that the reference to the misdemeanor of disturbing the peace is not permissible pursuant to Rule 609, W.R.E. We believe that is correct, but it does not address the vice of the particular question regarding an arrest. The State relies upon Rule 611(b), W.R.E., which provides:

"*Scope of cross-examination.*—Cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. The court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination."

The State then contends that the ruling was discretionary with the trial judge and that the deference we give to rulings with respect to the admissibility of evidence is sufficient to sustain the action of the district court in this instance. *Hopkinson v. State*, Wyo., 632 P.2d 79 (1981), cert. denied 455 U.S. 922, 102 S.Ct. 1280, 71 L.Ed.2d 463 (1982).

■ The admissibility of this evidence must be justified within the context set forth in *Story v. State*, Wyo., 721 P.2d 1020, cert. denied — U.S. —, 107 S.Ct. 459, 93 L.Ed.2d 405 (1986), in which the court advised that Rule 611(b), W.R.E., permits cross-examination which exceeds the scope of the direct examination when it goes to the credibility of the witness. As stated in 3 D. Louisell and C. Mueller, Federal Evidence § 336 at 433 (1979):

" * * * Rule 611(b) makes it clear that cross-examination may properly pursue 'matters affecting the credibility of the witness.' This provision amounts to an endorsement of a long-recognized rule that the scope-of-direct limit does not in any event apply to cross-questions designed to test credibility."

Even so the relevance of questions relating to arrest for crime traditionally is highly suspect, and ordinarily the prejudice which would attach to such questions when compared to the relevance of the information in the context of Rules 401, 402 and 403, W.R.E., leads to a conclusion that permitting the prosecution to inquire of the accused about prior arrests is error. *Gabrielson v. State*, Wyo., 510 P.2d 534 (1973), and cases cited in n. 1 at 536. Technically, that is true in this instance.

■ It is obvious from the record that the point of the prosecutor's questions was to establish that having testified that she lived with her mother at a particular address during the period of time which is material in this case, Jones had furnished a different address to the arresting officer. In our judgment the prosecutor got the cart before the horse. It is apparent that Jones could have been asked about whether she had furnished a different address, and if she had admitted that she had the impeachment would have been accomplished without any reference to the circumstances under which she furnished it. If she denied having furnished a different address, even upon having her recollection refreshed, then in all likelihood the prosecution could have established the circumstances under which the different address was furnished although prudence might have suggested that the arresting officer simply be called to testify to the fact that she had given him the different address. All of this could have been accomplished without any reference to the arrest for the misdemeanor of disturbing the peace; certainly, it should not have occurred in the way that it did. We hold that it was error simply to ask about an arrest.

■ The State of Wyoming urges, however, the concept of harmless error with respect to this particular incident. Rule 7.04, W.R.A.P., provides:

"Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."

An error must be "injurious or prejudicial" to warrant reversal, and it is the burden of the party appealing to establish the injurious or prejudicial nature of the error. *Spilman v. State*, Wyo., 633 P.2d 183 (1981). We have said with respect to Rule 49(a), W.R.Cr.P., which is the source of Rule 7.04, W.R.A.P., that:

> " * * * For an error to be regarded as harmful, there must be a reasonable possibility that in the absence of the error, the verdict might have been more favorable to the defendant." *Hoskins v. State*, Wyo., 552 P.2d 342, 351, reh. denied 553 P.2d 1390 (1976), cert. denied 430 U.S. 956, 97 S.Ct. 1602, 51 L.Ed.2d 806 (1977).

Examining this error in the context of the entire record, we conclude that it was not so prejudicial that it affected the outcome of the decision. The reference to the arrest was momentary and not the subject of extensive inquiry by the prosecutor. Cf. *Gabrielson v. State*, supra. The evidence establishing the circumstances surrounding the attempted robbery and the identity of Jones as the perpetrator was relatively strong.

We have recognized that the danger which attaches to evidence concerning a prior bad act is that the defendant will be found guilty not because he committed the crime charged but because of a general propensity for committing criminal acts or being a bad person. *Schmunk v. State*, Wyo., 714 P.2d 724 (1986); *Gabrielson v. State*, supra. In this instance, we are unable to find that the passing reference to the arrest, which simply was prefatory to the fact that a different address had been furnished, was such an error that in its absence there would be any reasonable possibility of a verdict more favorable to Jones. It is clear that she was convicted because the jury believed the witnesses called by the prosecution who testified to the commission of the crime and Jones' identity and did not accept the alibi evidence for other good reasons.

We conclude that while there was error in admitting the evidence of the arrest, it was not prejudicial, and that no error occurred with respect to the admission of the evidence of the crime of credit card fraud. The judgment and sentence of the district court is affirmed.

URBIGKIT, J., dissents.

URBIGKIT, Justice, dissenting.

No matter how clearly determined I may view guilt in this case, that conception should not abrogate principles of criminal-trial fairness or rules of evidence. Over-broad generalizations in the Raynell Jones case can be expected to recur in future cases without the equivalency of predetermined guilt, to then justify a result that I will not now approve.

Prosecutorial overreaching will only be discontinued when the detriment in case reversals exceeds the benefit in excused convictions. The evidentiary tactic of using bad-acts and bad-actor evidence for proof of guilt has continued unreasonably, despite adverse comment by this court. The "do better next time" admonition seldom deters future conduct. See *State v. Sorrentino*, 31 Wyo. 129, 224 P. 420, 34 A.L.R. 1477 (1924).

> "The prosecuting attorney asked the defendant, who testified in his own behalf, as follows: 'When was it you paid a fine for moonshining in Rawlins?' The question was objected to and the objection sustained. It is claimed that the asking of the question was misconduct entitling the defendant to a new trial. There can be no doubt that it was misconduct. The question assumed as an affirmative fact that the defendant had been guilty of a distinct crime not in the remotest degree connected with the crime for which the defendant was being tried. The Supreme Court of Pennsylvania in *Wagner v. Hazle Twp.*, 215 Pa. 219, 225, 64 Atl. 405, 407, speaking of a similar situation, says:
>
> > " 'When an attorney in the trial of a cause willfully and intentionally makes an offer of wholly irrelevant and incompetent evidence * * * it is the plain duty of the trial judge, of his own motion, to act promptly and effectively by reprimanding counsel and with-

drawing a juror and continuing the cause at the costs of the client. In no other way can justice be administered and the rights of the injured party be protected. The imposition of the costs will remind the client that he has an attorney unfaithful to him as well as to the court. The obligation of fidelity to the court which an attorney assumes on his admission to the bar is ever thereafter with him, and when he attempts to defeat the justice of a cause by interjecting into the trial wholly foreign and irrelevant matter for the manifest purpose of misleading the jury, he fails to observe the duty required of him as an attorney and his conduct should receive the condemnation of the court.' " 224 P. at 425.

See also *MacLaird v. State*, Wyo., 718 P.2d 41 (1986); *Capshaw v. State*, Wyo., 714 P.2d 349 (1986); *Westmark v. State*, Wyo., 693 P.2d 220 (1984); *Richter v. State*, Wyo., 642 P.2d 1269 (1982), overruled by *Westmark v. State*, supra; *Barnes v. State*, Wyo., 642 P.2d 1263 (1982); *Browder v. State*, Wyo., 639 P.2d 889 (1982); *Roby v. State*, Wyo., 587 P.2d 641 (1978); *Jones v. State*, Wyo., 580 P.2d 1150 (1978); *Valerio v. State*, Wyo., 527 P.2d 154 (1974); *State v. Holm*, 67 Wyo. 360, 224 P.2d 500 (1950); *Rosencrance v. State*, 33 Wyo. 360, 239 P. 952 (1925); *Johnson v. State*, 29 Wyo. 121, 211 P. 484 (1922).

In this case, the prosecutor was actually using an address-questioning strategy to bring evidence of a misdemeanor arrest without conviction before the jury. The mother's address compared with another address which defendant had used was entirely without probative status in this young black woman's trial where the charge was hassling an elderly man by threat of violence. Raynell Jones was not unknown to the Casper police or prosecuting officers,[1] and the address had absolutely nothing to do with guilt or innocence except as a mechanism for conviction by extrinsic evidence.

I do not find this prosecutorial action to be harmless beyond any doubt or beyond a reasonable doubt, no matter how incisive proper evidence may have been or how unbelievable the alibi evidence proved to be. By this decision a bad rule for future cases is created. See Richter v. State, supra. What the court countenances is what we will see repeated in future appeals.

The second issue is even more perplexing in potential future adaptation. Presented is a case of a young woman charged with armed robbery of an elderly man, where the court, under Rule 609(a)(2), W.R.E., accepts evidence of some undefined kind of a credit-card misdemeanor offense. Two cases are cited by this court to support the principle that "credit card fraud" falls within the "dishonesty or false statement" criteria of Rule 609. In its brief, the State cited no specific case authority which supports the inclusion of the factually undescribed offense within the impeachment admissibility criterion, except *State v. Malloy*, 131 Ariz. 125, 639 P.2d 315 (1981), which was also used as authority by appellant.

In *Malloy*, supra, in conviction reversal for trial-court admission of improper Rule 609 impeachment evidence, the prior offense involved was a misdemeanor charge of attempted burglary. The State's contention that the offense came within the dishonesty or false-statement terminology was rejected, and the conviction was reversed by application of the standard for error after admission of improper evidence. The court stated:

"The test for reversible error is 'whether there was a reasonable probability under such facts that the verdict might have been different had the error not been

---

1. Defendant entered a plea of not guilty, not guilty by reason of mental illness or deficiency, and not triable by reason of present mental illness. In accord with the commitment that followed, the evaluation report reflected a 25-year-old female prostitute charged with three counts of attempted robbery/burglary during the months of October and November, 1985. The rap sheet record upon which sentence was imposed includes two offenses involving probation, including the illegal use of credit cards and approximately 24 other offenses, none of which, until the present case, ever resulted in a felony conviction.

committed.'" *State v. Malloy,* supra, 639 P.2d at 319.

The second case cited by this court in support of its credit-card-offense rule is *United States v. Smith,* 179 U.S.App.D.C. 162, 551 F.2d 348, 39 A.L.R.Fed. 539 (1976), where the court considered an attempted robbery for application of Rule 609 impeachment as "dishonesty or false statement." The appellate court found error, and remanded for the trial court to evaluate the prejudicial effect of the improper evidence. See also *United States v. Millings,* 175 U.S.App.D.C. 293, 535 F.2d 121 (1976). At best, use of robbery and burglary cases defining dishonesty or false statement as applicable to a credit-card situation is obiter dictum. 3 D. Louisell and C. Mueller, Federal Evidence §§ 317 at 334–335 affords no greater support in stating:

> "Post-Rules authority suggests that courts may look at the facts underlying a particular conviction, and may treat such conviction as embraced by Rule 609(a)(2) if the underlying facts indicate falsehood or dishonesty in the narrow sense of deception." Id. at 340.

The point made by this dissent is that the record was totally insufficient for either this court or the trial court to determine that what Raynell Jones did involving a credit card was blackmail, larceny, embezzlement, false pretense, forgery, or any number of other possible criminal offenses.[2] In the interest of proper application of Rule 609(a)(2), the actual charge in the prior offense should control, and not conceptualized possibilities. I am not inclined to accept the generalized rule as invoking a new adjudicative principle that anything that involves credit cards "clearly falls within those crimes involving dishonesty or false statement" under Rule 609(a)(2), W.R.E., when in fact the particular offense may or may not be within the character or characterization clearly defined and considered by the United States Congress in debate. See H.R.Conference Report No. 93–1597, 93d Congress, Second Session, 9 (1974) and general discussion in the appendix, and *United States v. Smith,* supra, 551 F.2d at 366, for an extensive review.

It is possible to discern from text and cases that theft is not necessarily included within the "falsehood or dishonesty" criteria of the rule, while forgery may be. See 3 D. Louisell and C. Mueller, supra, § 317 at 341, and Appendix at 170; *United States v. Yeo,* 739 F.2d 385 (8th Cir., 1984).

> "Because the crime of larceny or theft is neither enumerated above nor encompassed by the strict meaning of the term 'crimen falsi,' an inference arises that Congress intended the term 'dishonesty' in Rule 609(a)(2) to mean something more than a man's propensity to steal what does not belong to him.

> "Precisely because of the variance between the common meaning of 'dishonesty' and the more restrictive meaning in which Congress apparently used the word, courts have split on the question of whether prior convictions for crimes involving stealing, without more, are admissible for impeachment purposes under Rule 609(a)(2).

> "As the developing conflict between the Circuits reveals, reasonable men may disagree about whether a witness's propensity to steal reflects upon his honesty in a manner that bears adversely on his propensity to tell the truth. * * *

> "Even the courts that reject the view that stealing, without more, involves 'dishonesty' that bears on a witness's veracity recognize that modern theft statutes may encompass criminal conduct that does fall within the ambit of Rule 609(a)(2), for a theft conviction may well be based on fraudulent or deceitful conduct that would previously have been prosecuted as larceny by trick, embezzlement, or the taking of money or property by false pretenses, etc. Accordingly,

---

**2.** The most specific evidence that is reflected in regard to the credit-card charge is found in the presentence investigation report, which data was not available to the court at trial date, and characterized the April 11, 1981 offense as "Forgery (Reduced to Unlawful Use of a Credit Card) [with a] One year probation, [and a] $500.00 fine."

these courts have adopted the rule that, when the statutory offense of which the witness was convicted does not require proof of fraud or deceit as an essential element of the crime, the prior conviction may yet be admitted under Rule 609(a)(2) if the proponent of the evidence bears the burden of showing that the conviction 'rested on facts warranting the dishonesty or false statement description.' " *United States v. Papia,* 560 F.2d 827, 846–847 (7th Cir.1977).

In evaluating *United States v. Smith,* supra, as a member of the advisory committee, Judge Robert Van Pelt commented:

"Reason and experience develop much of the law of evidence. Any advisory committee on rules of evidence will soon find itself deeply indebted to the law schools for the collection and discussion of the experience of the bench, as shown by the reported cases, and for the reasoning contained in law review articles, whether supportive or critical of the rulings of the courts." Van Pelt, *The Background of Federal Rules 611(b) and 607,* 57 Neb.L. Rev. 898, 907 (1978).

Professor Cleary then noted in an article discussing *United States v. Smith,* supra:

" * * * Yet considering the legislative history, which the court examined carefully and in detail, the conclusion that the Congress intended to include only crimes of false statement, and that 'dishonesty' was devoid of significant meaning, is difficult to avoid. Illustrative of the legislative history is the Conference Committee Report:

" 'By the phrase "dishonesty and false statement" the Conference means crimes such as perjury or subornation of perjury, false statement, criminal fraud, embezzlement, or false pretense, or any other offense in the nature of crimen falsi, the commission of which involves some element of deceit, untruthfulness, or falsification bearing on the accused's propensity to testify truthfully.' " Cleary, *Preliminary Notes on Reading the Rules of Evidence,* 57 Neb.L.Rev. 78, 919 (1978).

Smith suggests that Alice in Wonderland invokes the recognition that somehow a characterization trend may follow Rule 609(a)(2) to extend its application from the slick talker to the heavy-fingered miscreant, including all styles of criminal offenses except threatened or committed violence, or momentary impulse. It is hard for me to conceptualize why the paperhanger is less likely to tell the truth than the midnight rapist. See 39 A.L.R.Fed. 570, 596, Witness Prior Conviction, in discussion of Rule 609(a)(2) as to crimes involving dishonesty. Consequently, I would confine this character of impeachment evidence to the obvious intent of Congress. Following submission by the United States Supreme Court, the rule was approved to include deceitful or fraudulent conduct, generally embracing the born or habitual liar. *United States v. Seamster,* 568 F.2d 188 (10th Cir.1978). Such characterization might or might not include credit-card offenses, dependent upon the activity involved in the effectuated crime.

In this case, even with the suggestive but undemonstrated suppositions by cross-examination, the State failed to create a record sufficient to establish the type of activity for which the defendant was convicted,[3] and whether that conduct rationally fits the criteria for admissibility under the misdemeanor impeachment rule. *United States v. Hayes,* 553 F.2d 824 (2d Cir.), cert. denied 434 U.S. 867, 98 S.Ct. 204, 54 L.Ed.2d 143 (1977).

Lacking adequate factual information to demonstrate (1) that the credit-card offense was actually based on evidentiary rule dishonesty or false statement under Rule 609, or (2) that impeachment by arrest record differentiation of addresses was harmless, I would reverse. If guilt does exist, I have no doubt that in a fair trial with proper

---

**3.** Credibility differentiation is hard to discern in this case between illegal use of credit cards, and child neglect, each of which earned appellant a probationary responsibility.

evidence, a retrial conviction can be obtained.[4]

___

**4.** Identification was hardly casual, including the description by complainant about her attire as first seen by him in the broad daylight occurrence and later confirmed by a person to whom he reported the incident who saw the defendant in the same vicinity of Casper, where she was a member of a distinct minority:

"Well she had on a kind of a tan jacket and had large red stripe[s] up about four to six inches wide coming across each shoulder, it was red.

\*   \*   \*   \*   \*   \*

"And I think had blue trousers \* \* \*.
" \* \* \* [B]raided hair coming down close to her collar \* \* \*."