2004 WY 131

**Russell CONDRA, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 03–158.

Supreme Court of Wyoming.

Nov. 4, 2004.

Representing Appellant: Ken Koski, State Public Defender; Donna D. Domonkos, Appellate Counsel.

Representing Appellee: Patrick J. Crank, Attorney General; Paul Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Daniel M. Fetsco, Assistant Attorney General.

Before HILL, C.J., and GOLDEN, KITE, and VOIGT, JJ., and WALDRIP, D.J.

KITE, Justice.

[¶ 1] Russell Condra sold two snowmobiles and a trailer he was storing for a friend and was convicted of larceny by bailee. Mr. Condra appeals his conviction claiming the prosecutor committed misconduct when he vouched for his own credibility and the credibility of his witnesses, suggested he would not have charged Mr. Condra with a crime unless Mr. Condra had done something wrong, relied on facts which were not in evidence, and attempted improper impeachment of Mr. Condra through the use of a prior conviction, thereby denying Mr. Condra a fair trial. We agree and reverse and remand for a new trial.

## ISSUES

[¶ 2] Both parties agree the sole issue for review is whether Mr. Condra was denied a fair trial due to prosecutorial misconduct.

## FACTS

[¶ 3] In July of 1999, Danny Cifers moved to Arizona and left two snowmobiles and a trailer with Mr. Condra, who agreed to store the machines and attempt to sell them. Over two years later, in September of 2001, Mr. Condra sold the snowmobiles and trailer for $1,700 to Kelly Donathan, but did not tell Mr. Cifers about the sale.

[¶ 4] When Mr. Cifers arrived in Thermopolis in late November 2001 to pick up his snowmobiles and trailer, Mr. Condra told him the snowmobiles were with a prospective buyer and would not be back for a couple of days. Mr. Cifers became suspicious and contacted the police, who located the snowmobiles and trailer at the home of Mr. Donathan. The State charged Mr. Condra with larceny by bailee in violation of Wyo. Stat. Ann. § 6–3–402(b) and (c)(i) (LexisNexis 2003), and although he claimed he sold the snowmobiles for late monthly storage fees, the jury found him guilty as charged on March 14, 2003. The court sentenced Mr. Condra to a term in the state penitentiary for a period of two to four (2–4) years, but suspended that sentence contingent upon his successful completion of five (5) years supervised probation.

## STANDARD OF REVIEW

[¶ 5] Our standard for reviewing allegations of prosecutorial misconduct is well settled. As we stated in *Simmons v. State*, 2003 WY 84, ¶ 15, 72 P.3d 803, ¶ 15 (Wyo.2003),

[p]rosecutorial misconduct "has always been condemned in this state." Whether such misconduct has been reviewed on the

basis of harmless error, W.R.Cr.P. 52(a) and W.R.A.P. 9.04, or on the basis of plain error, W.R.Cr.P. 52(b) and W.R.A.P. 9.05, this Court has focused on whether such error affected the accused's "substantial rights." The accused's right to a fair trial is a substantial right. "Before we hold that an error has affected an accused's substantial right, thus requiring reversal of a conviction, we must conclude that, based on the entire record, a reasonable possibility exists that, in the absence of the error, the verdict might have been more favorable to the accused."

(citations omitted). The appellant bears the burden of establishing prosecutorial misconduct.

[¶ 6] Mr. Condra claims three distinct incidents of prosecutorial misconduct at different stages of the trial. Because Mr. Condra did not object at trial to two of the incidents, it is incumbent upon him to demonstrate plain error as to those instances of alleged misconduct. "Plain error exists when 1) the record is clear about the incident alleged as error; 2) there was a transgression of a clear and unequivocal rule of law; and 3) the party claiming the error was denied a substantial right which materially prejudiced him." *Dysthe v. State*, 2003 WY 20, ¶ 23, 63 P.3d 875, ¶ 23 (Wyo.2003).

[¶ 7] Mr. Condra did object at trial to the third instance of alleged misconduct. We, therefore, review that incident for harmless error. Wyoming Rule of Appellate Procedure 9.04 states that "any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded by the reviewing court." Wyoming Rule of Criminal Procedure 52(a) and Wyoming Rule of Evidence 103(a) contain similar provisions. The test for harmless error is as follows:

An error is harmful if there is a reasonable possibility that the verdict might have been more favorable to the defendant if the error had never occurred. To demonstrate harmful error, the defendant must show prejudice under "circumstances which manifest inherent unfairness and in-

justice or conduct which offends the public sense of fair play."

*Dysthe*, ¶ 10 (citation omitted).

## DISCUSSION

### *Vouching for Credibility and Ignoring the Burden of Proof*

[¶ 8] Mr. Condra contends that the prosecutor committed misconduct during his closing argument first by using his position as an officer of the court to boost his own credibility, as well as the credibility of the State's witnesses, and second, by urging the jury to ignore the presumption of innocence and, thus, the State's burden of proof. The State insists the prosecutor did not vouch for the State's witnesses or assert his own credibility as a basis for conviction, and actually urged the jury to carefully review each witness's credibility.

[¶ 9] The prosecutor argued as follows during his rebuttal closing argument:

Defense counsel told you at the beginning of trial this would be a he said she said situation, and it really is. And **all I have to sell you today is my credibility and that being an officer of this court, the credibility of my witnesses.** Now as an officer of this court it's my duty to seek justice. It's not about prosecuting people, it's not about throwing them in jail. **If what Mr. Condra did wasn't wrong, then we wouldn't be here today.**

[¶ 10] Mr. Condra did not object to this argument at trial, so our review is confined to plain error. The incident alleged as error in this instance is clearly set forth in the record and, as such, the first requirement of our plain error standard is met. Thus, our focus will be on the second and third elements of plain error.

[¶ 11] We have often recognized the clear and unequivocal rule of law that a prosecuting attorney cannot personally vouch for the credibility of the State's witnesses. *Harper v. State*, 970 P.2d 400, 403 (Wyo. 1998). Furthermore, it is well established that a prosecutor cannot assert his or her own credibility as a basis for conviction of defendants. *Browder v. State*, 639 P.2d 889, 893 (Wyo.1982). As we explained in *Barela*

*v. State,* 787 P.2d 82, 83–84 (Wyo.1990) (citation omitted),

> [w]hen the prosecutor asserts his credibility or personal belief, an additional factor is injected into the case. This additional factor is that counsel may be perceived by the jury as an authority whose opinion carries greater weight than their own opinion; that members of the jury might be persuaded not by the evidence, but rather by a perception that counsel's opinions are correct because of his position as prosecutor, an important state official entrusted with enforcing the criminal laws of a sovereign state. While the prosecutor is expected to be an advocate, he may not exploit his position to induce a jury to disregard the evidence or misapply the law.

[¶ 12] As the State points out, the propriety of any comment within a closing argument is measured in the context of the entire argument. *Mazurek v. State,* 10 P.3d 531, 542 (Wyo.2000). The State contends that, when viewed in context, the prosecutor's remarks were a proper response to defense counsel's argument and reminded the jury that witness credibility was a key issue. Defense counsel had argued the prosecutor was doing what should have been civil work on the State's dime, and was also working to conceal unlawful confiscation of the snowmobiles by law enforcement. The State argues the prosecutor merely explained why his witnesses were credible.

[¶ 13] While the prosecutor's review of the testimony of his witnesses was certainly appropriate, it does not excuse the prosecutor's unabashed claim that those witnesses were credible because he was credible. Irrespective of whether in response to defense arguments or not, a prosecuting attorney simply cannot vouch for the credibility of the State's witnesses. *White v. State,* 2003 WY 163, ¶ 28, 80 P.3d 642, ¶ 28 (Wyo.2003). Stating that all he had to "sell" to the jury was "my credibility and that being an officer of this court, and the credibility of my witnesses" crossed the very clearly established line for prosecutors.

[¶ 14] The prosecutor's transgression in this case is similar to that found to be improper in *Dysthe,* ¶ 28. That prosecutor argued:

> These witnesses, despite the fact that they are users, were credible. They were very credible. They were more credible because of the very fact that they have a relationship with this Defendant. More credible because, if you couldn't tell, I certainly could; they didn't like me asking them questions. They didn't want to be telling me anything.

He also stated he had worked with investigators on the case and could "guarantee" that their investigations were not "arbitrary," and that the witnesses "had no reason to lie." *Id.* This Court held those statements improperly gave the clear impression that the prosecutor believed the witnesses and so should the jury.

[¶ 15] In this instance, the prosecutor's comments are even more egregious than in *Dysthe.* Even though this prosecutor, at the end of his rebuttal closing argument, asked the jury to give "serious consideration as to the weight and credibility of every witness who testified," we cannot overlook the prosecutor's unequivocal vouching for the credibility of "his" witnesses, and then tying their credibility to his own as an "officer of this court." Doing so satisfies the second element of plain error. The third element is also satisfied because the prosecutor's comments denied Mr. Condra's substantial right to have the jury decide his guilt or innocence based on the facts, not on the prosecutor's improper comments. *See Dysthe,* ¶ 31.

[¶ 16] Mr. Condra also claims the prosecutor improperly urged the jury to ignore the presumption of innocence and the proper burden of proof when he stated, "If what Mr. Condra did wasn't wrong, we wouldn't be here today." The State asserts this comment was a reasonable response to defense counsel's argument that the case was a civil matter that was being improperly prosecuted as a crime. We disagree.

[¶ 17] A basic premise of our criminal law system is that the burden of proof rests upon the State and never shifts. *Lane v. State,* 12 P.3d 1057, 1066 (Wyo.2000). A prosecutor is not permitted to inhibit the

right to a presumption of innocence through closing argument. *Stephens v. State*, 774 P.2d 60, 75 (Wyo.1989). As we did in *Lafond v. State*, 2004 WY 51, ¶ 36, 89 P.3d 324, ¶ 36 (Wyo.2004), we note "jurors recognize the prosecutor's role as a leader of law enforcement in their community; they naturally regard the prosecutor as a symbol of authority; that recognition and regard may impress a jury, causing jurors to give significant weight to the words of a prosecutor." By telling the jury, "If what Mr. Condra did wasn't wrong, we wouldn't be here today," the prosecutor told the jury to disregard the presumption of innocence. This is a clear violation of the rule of law that a defendant is presumed innocent until the State proves otherwise and denied Mr. Condra his right to a fair trial.

[¶ 18] The evidence of Mr. Condra's guilt presented by the State in this case was not overwhelming and Mr. Condra presented a plausible defense to the charges, contending he was entitled to sell the snowmobiles and trailer to cover storage costs. Therefore, we conclude a reasonable probability existed that but for the prosecutor's comments, the verdict might have been more favorable to Mr. Condra. Thus, we hold the prosecutor's improper arguments were plain error.

### *Arguing Facts Not in Evidence*

[¶ 19] Mr. Condra claims prosecutorial misconduct also occurred during closing argument when the prosecutor relied on evidence that was not admitted at trial. Again, we must consider "the prosecutor's argument in its entirety, not just the sentences and phrases taken out of context." *Lafond*, ¶ 33. Also, because Mr. Condra lodged no objection, we again apply the plain error standard to this claim.

[¶ 20] In his closing argument the prosecutor discussed how to register certain trailers in Wyoming and then argued Mr. Condra had provided false information to the county clerk to do so. His comments were as follows:

Now through the course of the trial I made a little bit of a fuss with Mr. Condra regarding a trailer registration. You might wonder why I did that. Well, in Wyoming, to register a trailer under a thousand pounds you don't have to show proof of ownership to get it licensed, all you have to do is go into the Treasurer's office and purport to them that you own that trailer, and that's the little yellow sheet of paper that I had out yesterday. It got entered into evidence so you will be able to take a look at it a little more closely when you go to the jury room.

But on that piece of paper it's got a little box and it says PUR slash ADD date. It's got a little box under it. That box says June 1, 2000. When Mr. Condra went in to get that snowmobile trailer licensed he reported to the Treasurer's office that he bought that snowmobile trailer on that date. That's how he got it licensed. He didn't have to show any proof, all he did was have to give them his word of how he had bought that snowmobile trailer on that date.

However, no evidence regarding that licensing procedure was ever introduced. The prosecutor did cross-examine Mr. Condra on how he obtained license plates for the trailer and the following exchange occurred:

[Prosecutor]: That's the document you received when you went to get the plates on the trailer; is that right?

[Mr. Condra]: That's correct.

[Prosecutor]: Okay. And also on that—hold onto your glasses for a second—also under—on that document—would you put your glasses back on, please—[it's] a purchase and it says PUR/APP date; is that right? It's towards the top.

[Mr. Condra]: [That] says 6–1–00.

[Prosecutor]: It says 6–1–00, which is June 1, 2000. You didn't provide any proof of ownership when you got the plates for that license—or that trailer; is that correct?

[Mr. Condra]: No, no the date it was issued was 10–10–01.

[Prosecutor]: Right, but you didn't—at that point in time you didn't have to provide any proof of ownership of the trailer to get this license; did you?

[Mr. Condra]: I don't remember, but I went into the Clerk's office and explained

everything to her. She said this was not a title, this was just plates.

[Prosecutor]: Right.

[Mr. Condra]: So that's what she did, she just licensed it for me.

[Prosecutor]: Right. But the date on there that you just read is the purchase date that you conveyed to the Clerk's office to get that title; is that right?

[Mr. Condra]: I didn't convey my purchase, I just brought this—this was issued on 10–10–01.

[Prosecutor]: But you had to convey to the Clerk's office that you owned that particular trailer to be able to license it; is that right, whether you provided proof of ownership or not?

[Mr. Condra]: No, I explained everything about how the property had been left on my property and I said I just need to get plates on it. She gave me this and she said this is not a title, this is just a license to the trailer.

[Prosecutor]: Right. But that date you just read is June 1, 2000; is that right?

[Mr. Condra]: Yeah, but I don't understand what that means.

[Prosecutor]: Okay.

[Mr. Condra]: I know the date issued was 10–10–01.

[¶ 21]  The prosecutor's cross examination of Mr. Condra regarding the purchase date recorded on the trailer's registration was clearly intended to reveal he had deceived the county clerk. However, Mr. Condra explicitly denied that he claimed ownership in order to get the trailer licensed, and no evidence concerning the procedure for licensing the trailer was introduced. Thus, the prosecutor's comments were not reasonable inferences—they were new, additional facts introduced by way of closing argument.

[¶ 22]  Wide latitude is allowed in discussing inferences to be drawn from the evidence *Shaffer v. State*, 640 P.2d 88, 106 (Wyo.1982). However, prosecutors must limit their closing arguments to commenting on the evidence. *White*, ¶ 28.

[¶ 23]  While we find the prosecutor's comments troubling, they are not sufficient by themselves to warrant reversal. However, those comments, when combined with the prosecutor's improper vouching for his own credibility and his witnesses' credibility, and his statement that if Mr. Condra had not done anything wrong, there would have been no prosecution, convince us a reasonable probability exists that Mr. Condra's right to a fair trial was affected and he should be granted a new trial. *See Simmons v. State*, 2003 WY 84, 72 P.3d 803 (Wyo.2003).

[¶ 24]  Mr. Condra draws our attention to another statement by the prosecutor, which he claims relies on facts not in evidence. The prosecutor implied that Mr. and Mrs. Condra and Mr. Donathan conspired to perjure themselves, stating:

> All that we have presented before us today, ladies and gentleman on his behalf, after a year and a half of preparing for this case is a letter and an attachment. We don't even know if they are legitimate. He showed us—but he did show us how him and his wife and his friend can all get up on the stand to testify as to how the machines were acquired. They were acquired through some money owed for storage, that's why he came into possession of them. Well, let's use our common sense. How many times do you think the three of them have talked about this case since it's been pending in 2001?

[¶ 25]  A prosecutor may make a reasonable inference that a witness is not truthful if the evidence supports that inference. "In the case where a prosecutor is commenting on witness credibility, i.e., calling the defendant a liar, we have upheld such comment when the evidence supports a reasonable inference that the defendant is a liar." *McCone v. State*, 866 P.2d 740, 754 (Wyo.1993).

[¶ 26]  Indeed, Mr. Donathan testified that he and Mr. Condra were acquaintances at the time he purchased the snowmobiles, but had since become friends. Contrary to Mr. Condra's claims, the prosecutor did not suggest the witnesses had committed perjury but only that Mr. Donathan and Mr. Condra were friends and had probably discussed the matter before trial. The prosecutor's state-

ment in this instance does not rise to the level of prosecutorial misconduct.

### Improper Character Evidence

■ [¶ 27] Mr. Condra argues the prosecutor committed prosecutorial misconduct when he improperly introduced previously undisclosed and unsubstantiated character evidence against Mr. Condra in front of the jury. During cross-examination, the following exchange occurred:

[Prosecutor]: And you lived in Texas for a number of years; is that right?

[Mr. Condra]: Thirty-eight years, I guess, something like that.

[Prosecutor]: While you were living in Texas you were convicted of fraud; is that right, for writing some bad checks?

[Mr. Condra]: No, I wasn't.

[Defense Counsel]: Objection, I need foundation for this.

The Court: Counsel, do you have any foundation?

[Prosecutor]: Other than he was living in Texas and at that point in time he had been convicted of fraud.

[Mr. Condra]: No, I hadn't, Your Honor.

The Court: Just a minute. Counsel, I think we need to take a short recess here. Counsel, join me in chambers.

Ladies and gentlemen, let's take 10 minutes.

In chambers, the court and counsel held the following conversation:

The Court: We're outside the hearing of the jury panel. Present are Counsel for the State, Counsel for the Defendant.

The Court [to prosecutor]: What kind of information do you have about previous convictions of the Defendant?

[Prosecutor]: I have a letter that's been sent from Texas to either law enforcement or our office. All it is, though, Your Honor, it is a copy of Texas record, it's not a certified copy. But it does list that he was convicted of fraud for a bad check and I believe it goes towards his truthfulness for character, as it is a fraud charge.

The Court: How recent?

[Prosecutor]: 1984, but I believe that anything that goes towards the truthfulness of character can go beyond a 10 year time period.

The Court: Has [Defense Counsel] seen this?

[Prosecutor]: I'm not sure if it was given to him in his discovery packet or not, if I can find the dang thing.

[Defense Counsel]: Well, there's several problems with the document. It's not a certified copy or anything. It isn't a fraud charge it says he was convicted of the issuance of a bad check, that's not necessarily a fraud charge that's been alleged here. I think basically the question would prejudice the jury at this point.

[Prosecutor]: Your Honor, I will agree that it is not a certified copy, but writing a bad check does constitute fraud, and that's what this—if you would like to look at the paperwork.

The Court: Counsel, I don't need to look at it. I think you're injecting some things in here that number one, first wasn't shown to the Defendant, and number two, while you may try to impeach this particular individual you will need something more than a mere letter to do that with. So I'm not going to allow that.

[Prosecutor]: Okay. I'll stop from questioning him regarding it.

[¶ 28] Following the meeting in chambers, the court did not address the matter in front of the jury, nor did defense counsel request the court give a curative instruction. After trial, defense counsel filed a motion for a new trial based on the prosecutor's improper attempt to impeach Mr. Condra with the alleged Texas conviction. The court denied the motion for new trial, and found that Mr. Condra had not been prejudiced.

■ [¶ 29] The State admits the prosecutor did not provide notice to defense counsel of his intent to impeach Mr. Condra in contravention of W.R.E. 609(b).[1] However,

---

1. W.R.E. 609(b) provides that evidence of a conviction more than ten years old is inadmissible

unless the proponent gives the adverse party

the State contends any error was harmless. An error must be "injurious or prejudicial" to warrant reversal, and it is the burden of the party appealing to establish the injurious or prejudicial nature of the error. *Spilman v. State,* 633 P.2d 183 (Wyo.1981). We have said that for an error to be regarded as harmful, there must be a reasonable possibility that in the absence of the error, the verdict might have been more favorable to the defendant. *Roderick v. State,* 858 P.2d 538, 550 (Wyo.1993): *White v. State,* 2003 WY 163, ¶ 7, 80 P.3d 642, ¶ 7 (Wyo.2003). In support of its position that any error was harmless, the State cites *Jones v. State,* 735 P.2d 699 (Wyo.1987) in which we held that improper questioning of a defendant charged with attempted robbery regarding her previous arrest for misdemeanor disturbing the peace, was harmless because the reference to the arrest was momentary and not the subject of extensive inquiry by the prosecutor, and the evidence establishing the defendant's guilt was relatively strong.

[¶ 30] The present case is distinguishable from *Jones.* Although the improper character reference here, as in *Jones,* was momentary, the reference was to a *conviction,* not an arrest. It is settled law in this jurisdiction that mere charges, accusations and arrests are consistent with innocence. *Schmunk v. State,* 714 P.2d 724, 730 (Wyo. 1986). Convictions, however, are not. Therefore, a reference to a conviction is far more damaging than a reference to an arrest. Furthermore, although the court sustained the objection to the prosecutor's attempt to use the conviction, it did so out of the presence of the jury and no curative instruction was given. As a result, this Court has no way of knowing whether or not the jury considered the alleged Texas conviction in its deliberations. Because the evidence of Mr. Condra's guilt was not overwhelming, we conclude the prosecutor's improper attempt to use the alleged Texas conviction could have affected the outcome of the trial, and was, therefore not harmless error.

## CONCLUSION

[¶ 31] The cumulative effect of the prosecutor's misconduct in this case affected Mr.

Condra's right to a fair trial and warrants a reversal. Looking at all of the incidents combined, a reasonable probability exists that, absent the prosecutor's misconduct, the verdict might have been more favorable to Mr. Condra. We cannot know whether the conviction resulted from the jury's independent evaluation of the evidence or from the jury having been swayed by the prosecutor's errors. See *Schmunk,* 714 P.2d at 743. Accordingly, we reverse the judgment and remand the case for a new trial.

sufficient advance notice in writing of the propo-

nent's intent to use such evidence.