**Glen "Red" REED, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 12-85-00199-CR.**

Court of Appeals of Texas,
Tyler.

Sept. 30, 1986.

Discretionary Review Refused
July 8, 1987.

James R. Moore, Longview, for appellant.

John Tunnell, Asst. Dist. Atty., Longview, for appellee.

COLLEY, Justice.

Glen Reed was convicted by a jury of unlawful delivery[1] of less than twenty-eight grams of methamphetamine, a controlled substance.[2] His punishment was assessed by the jury at twenty-five years' confinement and a $10,000 fine.

Reed briefs three points of error. First, he claims the court erred in overruling his motion for instructed verdict because the evidence was insufficient to establish "that [he] ... constructively delivered" the methamphetamine as alleged by the indictment; second, he contends that the evidence does not prove venue of the offense in Gregg County; and third, he argues that the court erred in admitting testimony over his objection of an extraneous offense committed by him. We affirm the conviction.

The record reveals[3] that Bob Alford, a Department of Public Safety officer serving in the Criminal Intelligence Division of the Department of Public Safety, was assigned by his supervisors to conduct an undercover investigation in Gregg County to assist local authorities in the apprehension of narcotic dealers and recovery of stolen property. Alford was first introduced to Reed at a local bar by a waitress, Carol Stevens. During the course of several conversations with Reed, Alford communicated his desire to purchase narcotics. Obligingly, Reed arranged a meeting with Alford on November 11, 1983, at which time he determined the quantity of "dope" Alford wanted. Alford then gave Reed $500 in cash. Later on December 13, 1983, Reed picked Alford up and drove him to a residence in Longview. Alford testified that while they were in route to the residence, he and Reed conversed in part as shown by the following testimony, to wit:

Q While you were riding in the car with the Defendant, did he threaten you?

A He did.

Q How did he threaten you?

A After I had asked why we was [sic] making heat runs, he said because if you are the police, I may get twenty years out of this, but you won't live another day.

Q Mr. Alford, after he made this threat, what were your feelings at the time?

A I took the threat serious. I was in fear of my life.

Q You thought this man was dangerous?

A I did.

Immediately after the "I did" answer, Reed made the following objection, "Your Honor, I'm going to object to all this line of testimony on the basis that it's an extraneous offense which is in clear violation of the Court's previous order." The objection was overruled.

After they reached their destination, Reed got out of the vehicle, talked to Stevens, who was at the location, then returned to the car and instructed Alford to follow Stevens into her apartment where she would give him a sealed envelope with five marks across the seal. He told Alford that if the marks were not there, or if the seal was broken, not to accept delivery, and that "he [Reed] would make it right." According to Reed's advice, after the delivery, Alford would be driven to his place of business by a person other than Reed, but Reed promised to telephone him and ask, "Are you happy?" Alford was instructed by Reed to answer simply, "Yes" or "No." Alford testified that Reed did call, asked the question, and that he told Reed "Yes."

■ We summarily overrule the second point of error. Alford testified near the close of his testimony, and after he had related all of the events leading up to and

1. Tex.Rev.Civ.Stat.Ann. art. 4476–15, § 4.03(a) (Vernon Supp.1986).

2. See Act of May 17, 1983, ch. 141, § 2, 1983 Tex.Gen.Laws 632, 636, amended by Act of June 3, 1985, ch. 227, § 8, Tex.Gen.Laws 1116, 1118

(codified as Tex.Rev.Civ.Stat.Ann. art. 4476–15 § 4.02(b)(6) (Vernon Supp.1986)).

3. Testimony of Bob Alford.

those occurring during the actual delivery of the opiate to him, that all of the events "took place inside Longview and Gregg County." The record contains no evidence tending to disprove Alford's testimony. We conclude the State proved venue of the offense in Gregg County by a preponderance of the evidence as required by the Code. *See* Tex.Code Crim.Proc..Ann. art. 15.17 (Vernon 1977); *Banks v. State*, 530 S.W.2d 940, 943 (Tex.Cr.App.1975).

■ Reed argues under his third point that the court committed reversible error in overruling his objection to Alford's testimony, wherein Alford asserted that Reed threatened to murder him if he was, in fact, a police officer.[4] Both parties cite us to *Albrecht v. State*, 486 S.W.2d 97, 100 (Tex. Cr.App.1972), and *Mitchell v. State*, 650 S.W.2d 801, 811 (Tex.Cr.App.1983), in their arguments on this point. We conclude that the application of the rule as enunciated in *Albrecht* is dispositive of the point. The threat made by Reed to Alford, as the State argues, is relevant and material in that it tends to prove that Reed, on the occasion in question, was acting "intentionally and knowingly" respecting the delivery of the controlled substance to Alford, and also tends to establish the agency relationship existing between Reed and Stevens, or at least that Stevens in delivering the methamphetamine to Alford, did so at the direction of Reed. Furthermore, the threat was made in an obvious attempt to intimidate Alford so that no criminal prosecution based on the sale would result. In that light, the jury was entitled to hear the testimony concerning the threat in order to evaluate the evidence in the case. *Id.* Point three is overruled.

■ Reed alleges in his first point of error that the court erred in overruling his motion for instructed verdict because the evidence was insufficient to prove that he made a "constructive delivery" of the methamphetamine to Alford. We disagree. The evidence already discussed shows circumstances from which a reasonable juror could infer that the actual delivery of the substance by Carol Stevens was indirectly controlled by Reed and was made at his instance and direction. The evidence shows that Reed collected from Alford the purchase price for the substance, drove Alford to the location of the delivery, and gave very explicit instructions to Alford regarding the actual delivery. Reed also informed Alford about the package enclosing the opiate and described the sealed envelope containing the drug, advising Alford not to accept delivery if the five marked lines across the seal were absent or if the seal had been disturbed. Finally, Reed told Alford to examine the substance when he did receive it, and if he was not happy, to say so when Reed's promised postdelivery telephone call was made.

The Court of Criminal Appeals adopted a definition of the term "constructive delivery" as used in former Tex.Rev.Civ.Stat. Ann. art 4476–15, § 1.02(8)[5] to mean, "the transfer of a controlled substance either belonging to the defendant or under his direct or indirect control, by some other person or manner at the instance or direction of the defendant."[6] *Davila v. State*, 664 S.W.2d 722, 724 (Tex.Cr.App. 1984).

Under the record we conclude that reasonable jurors could have found from the evidence beyond a reasonable doubt that

---

4. The testimony quoted on page two of the opinion tends to establish the offense of terroristic threat under Tex.Penal Code Ann. § 22.07(a)(2) (Vernon 1974).

5. Act of May 17, 1983, ch. 111, § 1, 1983 Tex. Gen.Laws 529–530, amended and renumbered by Act of June 3, 1985, ch. 227, § 1, 1985 Tex. Gen.Laws 1103 (presently codified as Section 1.02(6) (Vernon Supp.1986)). The 1983 version in part read:

    (8) 'Deliver' or 'delivery' means the actual or constructive transfer from one person to

another of a controlled substance ... whether or not there is an agency relationship.

6. CAVEAT: Although the statute seems to expressly provide that a "delivery" can occur through the means of a "constructive transfer" without the existence of an agency relationship between the transferor and the transferee, the term "constructive delivery" as defined in *Davila* implies that an agency relationship must exist in every case involving constructive delivery of a controlled substance.

Reed was guilty of a "constructive delivery" of 5.3 grams of methamphetamine to Alford as charged. The first point is overruled, and the judgment below is affirmed.