**Lisle FORTNER, Appellant (Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

No. 91–257.

Supreme Court of Wyoming.

July 31, 1992.

Leonard D. Munker, State Public Defender, Deborah Cornia, Appellate Counsel, and Erin A. McIntyre, Asst. Public Defender, for appellant.

Joseph B. Meyer, Atty. Gen., Sylvia Lee Hackl, Deputy Atty. Gen., Barbara L. Boyer, Sr. Asst. Atty. Gen., Theodore E. Lauer, Director of Prosecution Assistance Program, and Kraig A. Byron, Student Intern. for Prosecution Assistance Program, for appellee.

Before THOMAS, CARDINE, URBIGKIT,* and GOLDEN, JJ., and JOFFE, District Judge (Retired).

JOFFE, District Judge (Retired).

Appellant Lisle Fortner appeals from his conviction for delivery of a controlled substance in violation of Wyo.Stat. § 35–7–1031(a)(ii) (1988). Finding no error in the issues he raises, we affirm his conviction.

Appellant presents us with the following issues:

ISSUE I

Was the Appellant denied his right to a fair trial by the improper remarks made

* Chief Justice at time of oral argument.

by the prosecutor in his rebuttal closing argument?

ISSUE II

Was there insufficient evidence to sustain the conviction of the Appellant for delivery of a controlled substance?

A confidential informant, concerned about the effect Deidre Bruns' use of drugs was having on Ms. Bruns' children, reported the problem to Gene Palmer, a deputy sheriff. Deputy Palmer asked the informant to set up a "buy" of methamphetamine from Ms. Bruns. On April 2, 1988, the informant, acting under Deputy Palmer's instructions, went to Ms. Bruns and asked her to obtain a quarter gram of methamphetamine. Ms. Bruns told the informant that she would not do the transaction for such a small amount. The two ended up agreeing that Ms. Bruns would purchase a full gram for the informant in exchange for $100.

Deputy Palmer gave the informant $100 to purchase the drugs from Ms. Bruns, and the informant gave the money to Ms. Bruns. Ms. Bruns telephoned appellant and arranged to get the methamphetamine from him. She then drove to his mobile home with the money.

Ms. Bruns met appellant's wife at the front of the trailer. Ms. Bruns, appellant, and appellant's wife went to the back bedroom of the trailer together. Ms. Bruns was vague at the trial about exactly what happened there. She related that the three of them "snorted" some methamphetamine. Someone, either appellant or his wife, either set the methamphetamine on a dresser or handed it to Ms. Bruns. Ms. Bruns also testified that the methamphetamine may have already been sitting on the dresser when she entered the bedroom.

These inconsistencies were complicated by the fact that Ms. Bruns had given an earlier statement in which she told an officer that she could not remember whether it was appellant or his wife who gave the methamphetamine to her. She also stated on that occasion that she thought it was only a half gram she purchased.

Ms. Bruns delivered the methamphetamine to the confidential informant at Ms. Bruns' house. The officers had the informant under surveillance while the delivery was being made. After she received the methamphetamine from Ms. Bruns, the informant gave it to Deputy Palmer.

The State of Wyoming originally brought felony delivery charges against appellant in February 1989. The State moved for dismissal on March 31, 1989, because Ms. Bruns, the key witness against appellant, had left the state of Wyoming and a warrant had been issued for her arrest. The case was dismissed without prejudice on April 11, 1989.

After the case was refiled, Ms. Bruns testified against appellant at his trial for delivery of a controlled substance. She pleaded guilty to misdemeanor possession and received a suspended sentence and probation. Her testimony against appellant was one of the conditions of her probation.

The jury found appellant guilty of the delivery charge. He received a sentence of not less than twenty-four months nor more than sixty months in the Wyoming State Penitentiary, was fined $2,000, and was ordered to pay $200 to the Crime Victims' Compensation Account. He took a timely appeal from the judgment and sentence of the court.

In his first issue, appellant contends that the prosecutor's comments in the closing argument deprived him of a fair trial. Appellant claims that the State improperly shifted the burden of proof to the defense and impermissibly alluded to his failure to testify. We consider first the statements appellant says shifted the burden of proof to the defense:

> [MR. THARP (prosecutor):] Let's take a look at some things and put things back into perspective. First of all, as far as why wasn't—why this witness wasn't called or why wasn't that witness called, Mr. O'Neil has equal access to those witnesses. Those witnesses are as well known to Mr. O'Neil.
>
> MR. O'NEIL [defense counsel]: Your Honor, I'd object to this line of argument. The defendant doesn't have to

prove anything, and he's implying that we have to prove things.

> THE COURT: Overruled.
>
> MR. THARP: Mr. O'Neil could have subpoenaed those witnesses. I mean, Eva Riddle Fortner was the defendant's wife. So don't get sidetracked there.

Appellant now claims that, by overruling the objection, the court allowed the jury to disregard the presumption of innocence and the State's burden of proof. We must first consider the context of the prosecutor's argument. It came in rebuttal closing. Appellant's trial counsel had commented in his closing argument on the State's failure to call certain witnesses:

> [Eric Seeman] saw Laura Shaw go into the mobile home. Laura Shaw is in Gillette. Never talked to her, like Laura Shaw would have nothing to say whatsoever. She could testify Lisle Fortner was in there, that methamphetamine was there, something like that. Laura Shaw? Nope, didn't think you people in the jury need to hear from Laura Shaw about any of those facts.
>
> Would Eva Riddle Fortner perhaps have something to say about this case, something that would help you in your deliberation? I don't know where Eva Riddle Fortner is, never talked with her, never attempted to talk with her. Like she had nothing to say that could enlighten us here, and we need a lot of enlightening.

■ We recognize generally that "where a witness is equally available to both parties, the failure to call the witness is not the proper subject of comment." *King v. State*, 780 P.2d 943, 953 (Wyo.1989). *See also Seyle v. State*, 584 P.2d 1081, 1086 (Wyo.1978). We have recognized an exception where the witness is the defendant's spouse and can assert the marital privilege because she is then available to the defendant but not to the government. *Seyle*, 584 P.2d at 1086. Eva Riddle Fortner, appellant's wife, was available to him but not to the government. *See* Wyo.Stat. § 1–12–104 (1988). Therefore, reference to appellant's failure to call her was not error.

■ In any case, the prosecutor made the statements about appellant's failure to call witnesses in response to appellant's argument that the *State* had not called those same witnesses. The inference was that the witnesses would have been unfavorable to the State. Once appellant "opened the door" by commenting on the State's failure to call the witnesses, he allowed the prosecution to close that same door. *See Sanville v. State*, 593 P.2d 1340 (Wyo.1979) (discussing the "opening of the door" rule). The State merely pointed out that the witnesses were equally available to appellant and that he could have called them if they were unfavorable to the State. We hold that the trial court did not impermissibly shift the burden of proof or deride the presumption of innocence by allowing the State to make the challenged comments.

■ Appellant next argues that the prosecutor made impermissible reference to his choice to remain silent. We have stated that comment on a defendant's exercise of his or her right to remain silent calls for reversal of his or her conviction. *Brewster v. State*, 712 P.2d 338, 340 (Wyo.1985); *Westmark v. State*, 693 P.2d 220, 222 (Wyo.1984). When reviewing an allegation that the prosecution made improper comment on the defendant's silence at trial, we ask

"whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify. It is not improper for the government to draw attention to the failure of lack of evidence on a point if it is not intended to call attention to the failure of the defendant to testify."

*Oldham v. State*, 534 P.2d 107, 112 (Wyo. 1975), (*quoting Knowles v. United States*, 224 F.2d 168, 170 (10th Cir.1955) (citation omitted)).

Appellant begins his argument by challenging this test. He claims that the prosecutor's *intent* in making a given statement has nothing to do with whether that statement is a comment on the accused's silence.

He notes that the accused suffers the same harm whether the prosecutor intended to comment on his silence or not. Appellant advocates a purely objective approach which, if we understand it correctly, would ask only whether a given utterance would naturally and necessarily be taken as a comment on the accused's silence. The prosecutor's motives for making the statement, which appellant characterizes as irrelevant, would be ignored.

We note first that the *Knowles* test, which first appeared in *Morrison v. United States*, 6 F.2d 809, 811 (8th Cir.1925), has received near universal application in the federal courts. *See* Martin D. Litt, Note, *Commentary by Co–Defendant's Counsel on Defendant's Refusal To Testify: A Violation of the Privilege Against Self–Incrimination?*, 89 MICH.L.REV. 1008, 1027 NN. 105–06 (1991). It is also the test generally followed in the state courts. 3 WAYNE R. LAFAVE & JEROLD H. ISRAEL, *Criminal Procedure* § 23.4 (Supp.1991). Appellant cites no authority specifically criticizing the *Morrison* test.

Appellant's approach has some theoretical appeal, in that it only explores the objective aspects of what the prosecutor said rather than attempting to probe his mind. However, as a practical matter it ignores the disjunctive nature of the test already in place. The *Knowles* test provides that language will be taken to be a comment on the defendant's silence if *either* (1) the language would naturally and necessarily be taken as such a comment, *or* (2) the prosecutor intended it to be such a comment. An examination of our past cases on this subject shows that, where we have analyzed the problem using *Knowles*, we have generally applied *both* criteria to determine whether an impermissible comment had been made. *See, e.g., Cyrus v. State*, 639 P.2d 900, 902 (Wyo.1982); and *Oldham*, 534 P.2d at 112. So long as both criteria are applied, appellant can have no basis for objection that subjective criteria have been used to sustain the prosecutor's comments.

The subjective approach supplies an additional benefit to the defendant, rather than

a detriment, because a failure to meet *either* criterion is cause for reversal for improper comment on the defendant's right to remain silent. So long as both criteria are applied, the *Knowles* test provides a reasonable and workable method of evaluating prosecutorial comment.

■ Having concluded that the *Knowles* test should continue to be used in Wyoming, we now apply it to this case. Appellant points to the following exchange, which took place during the prosecutor's rebuttal argument:

MR. THARP: Ask yourself this, did Deidre Bruns make any money? No. Did Lisle Fortner make any money?

MR. O'NEIL: Your Honor, I object to that. That's not what the testimony was. The testimony was she didn't know who took the money. She never saw anybody touch that money.

THE COURT: Ladies and gentlemen of the jury, I again remind you you are the judges of the facts, not the attorneys. Use your own recollection of what the testimony was. You're not bound by any of the arguments of any of the attorneys.

MR. THARP: Well, ladies and gentlemen, the testimony was that she laid a hundred dollars down out there, and the testimony unimpeached was that she didn't trust—or he, the defendant, didn't trust the wife enough to do these kinds of activities. Now, the inference is he got the money.

She testified to prior drug transactions. Who got the money? Who did she say was involved in those? Lisle Fortner. Now, then, who had the drugs? Testimony was that Lisle Fortner had the drugs. Deidre Bruns didn't get these drugs out of her house. They came from Lisle Fortner.

And who sold Deidre Bruns these drugs? Who had sold them to her on prior occasions? Lisle Fortner. Now,

then, when you consider all these things, Deidre Bruns doesn't look that bad after all. . . .

. . . .

Now, then, as far as all the scenarios and so forth that the defendant laid out about possibilities and probabilities, yes, anything is possible. You know, I might be president tomorrow, but the odds are pretty remote, but it is possible. We're not talking about possibilities or probabilities. We're talking about testimony from a witness stand. And that's what you have to base your verdict on, the testimony that you heard from that witness stand.

Appellant claims that these are comments on his failure to testify because only he could have impeached Ms. Bruns' testimony that he did not trust his wife or countered the prosecutor's implication that he received the money from Ms. Bruns. This overlooks the fact that appellant's *wife* was present at the trailer and could have been called to testify to both matters.[1] Since appellant was not the only witness to the disputed statements or the only person who had knowledge of them, the references to uncontroverted testimony cannot be said to refer to his failure to take the stand. Rather, they refer to the defense's failure to put on *any* witnesses to counter the witnesses for the prosecution. Furthermore, the context shows that the statements were made to rebut comments by the defense attacking the prosecution's chief witness. Under the circumstances, a jury would not naturally and necessarily take these statements to be a reference to the appellant's failure to testify, nor does the evidence show that they were so intended. We conclude that there was no impermissible comment on appellant's failure to testify.

■ Appellant also assigns error from the following exchange. In order to impeach Ms. Bruns' testimony, appellant's tri-

---

1. We take note, in passing, of cases from other jurisdictions holding that reference to a defendant's spouse's failure to testify is not considered a reference to the defendant's failure to testify. *See, e.g., Lavernia v. Lynaugh,* 845 F.2d 493, 497 (5th Cir.1988); *Satillan v. State,* 470 S.W.2d 677, 678 (Tex.Ct.App.1971); and *People v. Bolster,* 24 A.D.2d 774, 263 N.Y.S.2d 574, 576 (1965).

al counsel prepared a chart which he used during his closing to show the penalties Ms. Bruns faced if convicted for her part in appellant's offense. The prosecutor, on rebuttal, argued as follows:

[MR. THARP:] Now then, let's talk about some reasons for people being motivated to do things. I think that this (pointing to chart) motive right here is motivation for a defendant to want to try to put as much distance between himself and the drug transaction as possible.

You know, if Mr. O'Neil is right, it might be something to consider regarding Deidre Bruns' testimony, but it might also be something to consider when thinking about the defendant's motivation—

MR. O'NEIL: Your Honor, I'd like to approach the bench.

(Conference at the bench without the hearing of the jury, as follows:)

MR. O'NEIL: Your Honor, I'm moving for a mistrial. That's a comment from the defendant's failure to take the stand.

THE COURT: I don't know if it is or not, it hasn't been completed.

After the trial court denied appellant's request for a mistrial, the prosecutor, instead of finishing his statement, went on to another topic. Appellant now claims that, by leaving the end of this statement "hanging," the prosecutor left the jury with the impression that appellant had the same motivation for not taking the stand as Ms. Bruns had for testifying against him.

The prosecutor later testified at a reconsideration hearing on the motion for a mistrial that his intention in making the remark was to discuss appellant's motivation for discrediting Ms. Bruns rather than his motivation not to testify. The trial court found this explanation more credible than appellant's explanation that the prosecutor was about to comment on his failure to testify. It noted that the prosecutor "didn't say anything," that it "didn't get to [comment on the accused's silence]," and that it was the defendant's premature objection which left the question open.

The question of whether a comment by the prosecutor was either intended as a comment upon the defendant's silence or must naturally and necessarily have been so understood is one of fact for the trial court in the first instance. *Stanton v. State*, 692 P.2d 947, 950 (Wyo.1984). Under the circumstances, we cannot say that the trial court erred in concluding that there had been no statement intended or understood concerning the defendant's failure to testify.

In his second issue, appellant argues that there was insufficient evidence to sustain his conviction. When reviewing a sufficiency of the evidence claim, we examine all the evidence in the light most favorable to the State, giving the State every reasonable inference to be drawn therefrom, to determine whether any reasonable trier of fact could have found the essential elements of the crime to have been proven beyond a reasonable doubt. *Walter v. State*, 811 P.2d 716, 719 (Wyo.1991).

■ Appellant attacks the testimony of Deidre Bruns, who was the only testifying witness to observe the methamphetamine transaction. Appellant claims Ms. Bruns' testimony shows that she could have received the methamphetamine from appellant's wife. It is true that Ms. Bruns could not remember for certain whether it was appellant or his wife who actually handed the methamphetamine to her.

If we examine the evidence in the light most favorable to the State, we must conclude that there was sufficient evidence for a reasonable jury to determine that it was appellant who actually handed the drug to Ms. Bruns. The jury could have believed Ms. Bruns on this point and disregarded the other, contradictory elements of her testimony. Her prior inconsistent statement, which was not made under oath, was relevant only for impeachment purposes and does not contribute substantively to our sufficiency of the evidence inquiry.

■ Even assuming, however, that it was appellant's wife who actually handed the drug over, appellant could still have been convicted of delivery of the methamphetamine if the jury had been properly instructed concerning *constructive* deliv-

ery. The court's instruction stated simply: "The term 'delivery' means the transfer from one person to another of a controlled substance." Both this instruction and appellant's argument that he did not deliver the methamphetamine are from an overly narrow interpretation of the word "deliver." Wyo.Stat. § 35–7–1002(a)(vi) (1988) defines "deliver" or "delivery" as follows:

> (vi) "Deliver" or "delivery" means the actual, constructive, or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship[.]

Although we have located no Wyoming authority defining "constructive" delivery in the drug context, attention is directed to *Simmons v. State*, 687 P.2d 255 (Wyo. 1984), in which a husband set up a drug transaction, but his wife made the actual delivery. We held that the evidence supported the husband's conviction of aiding and abetting delivery of a controlled substance. A Texas case, *Reed v. State*, 733 S.W.2d 556 (Tex.Ct.App.1986), illustrates how "constructive" delivery may occur. In that case, Glen Reed took Bob Alford, a narcotics officer, to a rendezvous with Carol Stevens. Reed gave detailed instructions to Alford about how to complete the transaction with Stevens and promised to call him later about how the transaction went. Reed then apparently left the scene. Later, he called Alford as promised about the success of the transaction. Reed argued on the appeal of his conviction for unlawful delivery of methamphetamine that there was insufficient evidence to prove he made a constructive delivery to Alford. The Texas Court of Appeals disagreed; it stated:

> The evidence already discussed shows circumstances from which a reasonable juror could infer that the actual delivery of the substance by Carol Stevens was indirectly controlled by Reed and was made at his instance and direction.

733 S.W.2d at 558. *Cf. United States v. Raper*, 676 F.2d 841, 848 (D.C.Cir.1982) (concerning "constructive" possession with intent to deliver of heroin in the hands of an accomplice).

The facts show that constructive delivery was accomplished by appellant in this case. Ms. Bruns testified that she called appellant and set up the transaction with him, not with his wife. When she arrived at his house, he asked her how much she wanted, and she said a gram. He told her to accompany him to the back bedroom. Eva Fortner accompanied them because "she just lived there." Ms. Bruns thought it was appellant who brought out the methamphetamine which they snorted as well as the methamphetamine which she bought. She testified that appellant didn't trust his wife with the methamphetamine or the money. Her testimony showed that appellant either actually or constructively controlled the delivery and that it was made at his instance and direction. This is enough to make out at least a case of constructive delivery. Under the circumstances, we hold that a reasonable jury properly instructed could have found, beyond a reasonable doubt, that appellant "delivered" the methamphetamine to Ms. Bruns within the meaning of the statute.

Appellant has not demonstrated any basis for reversing his conviction. His conviction is, therefore, affirmed.