2008 WY 23

**Lily M. HARRIS, Appellant (Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

No. S–07–0131.

Supreme Court of Wyoming.

March 3, 2008.

Representing Appellant: Diane M. Lozano, Wyoming State Public Defender; Tina N. Kerin, Appellate Counsel; Donna D. Domonkos, Senior Assistant Appellate Counsel; and Kirk A. Morgan, Assistant Appellate Counsel.

Representing Appellee: Bruce A Salzburg, Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Robin Sessions Cooley, Deputy Attorney General.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

VOIGT, Chief Justice.

[¶ 1]   The appellant appeals from her burglary conviction, raising issues concerning the admission of uncharged misconduct evidence and prosecutorial misconduct. Finding no error, we affirm.

## ISSUES

[¶ 2]   1.   Whether the district court abused its discretion by admitting uncharged misconduct evidence?

2.   Whether prosecutorial misconduct occurred when the prosecutor misstated the evidence in the State's proffer of the uncharged misconduct evidence?

3. Whether prosecutorial misconduct occurred when the prosecutor argued in rebuttal that the jury should ignore the State's burden of proof and should not penalize the community if the State had not met its burden of proof?

## FACTS

[¶ 3] The appellant was employed by Goodwill Industries, Inc., in Cheyenne, Wyoming. While working one evening, she set aside a number of clothing items for her own purchase. A later review of video surveillance showed that the appellant did not pay for all the items that she took. She was confronted by her supervisor on February 22, 2006, and her employment was terminated. Her response was, "I'll get you for this, you bitch."

[¶ 4] The Goodwill store was burglarized on the night of May 1, 2006. Items taken included a safe, two pairs of roller blades, two or three bicycle helmets, two Apple i-pod accessories, one or two Remington razors, and a cell phone. Goodwill employees who viewed the surveillance video of the burglary identified the appellant as the burglar. The appellant was charged with burglary and convicted by a jury. Her sentence of three to five years incarceration was suspended and she was placed on probation for four years.

## DISCUSSION

### Whether the district court abused its discretion by admitting uncharged misconduct evidence?

[¶ 5] We review a district court's rulings on the admissibility of evidence, including uncharged misconduct evidence, for an abuse of discretion, and we will not reverse absent a clear abuse of such discretion. *Bromley v. State*, 2007 WY 20, ¶ 8, 150 P.3d 1202, 1206 (Wyo.2007). "A trial court abuses its discretion when it could not have reasonably concluded as it did." *Id.* at ¶ 8, at 1206–1207. The admissibility of uncharged misconduct evidence is governed by W.R.E. 404(b):

Evidence of other crimes, wrongs, or acts is not admissible to prove the charac-

ter of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

[¶ 6] The district court is to determine the admission of proffered evidence under this rule by applying the following test:

[B]ecause uncharged misconduct evidence carries an inherent danger for prejudice, we have also adopted a mandatory procedure for testing its admissibility: (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the probative value of the evidence must not be substantially outweighed by its potential for unfair prejudice; and (4) upon request, the trial court must instruct the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted.

*Gleason v. State*, 2002 WY 161, ¶ 18, 57 P.3d 332, 340 (Wyo.2002). "Admissibility under W.R.E. 404(b) is not limited to the purposes set forth in the rule, and we have adopted a liberal approach toward admitting uncharged misconduct evidence." *Id.*

[¶ 7] Prior to trial, the State filed a Notice of State's Intent to Introduce Evidence That May Be Considered 404(B) Evidence. The identified evidence was (1) the appellant had been terminated from employment with Goodwill for suspected theft; (2) at the time of her termination from employment, the appellant had threatened retaliation; and (3) as seen in the surveillance video of the burglary, the coat being worn by the burglar appeared to be identical to a coat allegedly stolen by the appellant at the time she was terminated. The State justified admission of this evidence as proof of *res gestae*, knowledge of the layout of the store, motive, and identity.

[¶ 8] The district court appropriately conducted a pre-trial hearing to determine whether the State's uncharged misconduct evidence would be admitted. In doing so, the court required the State to analyze in detail its proffered evidence under the *Gleason* factors set forth above (*see supra* ¶ 6), and it allowed the appellant's counsel to chal-

lenge each of those factors. In the end, the court declared the evidence admissible, finding it relevant to prove both motive and identity. The court did, however, limit the extent to which the State could characterize the appellant's conduct at the time of her termination as being a theft.

[¶ 9] In her appellate brief, the appellant contends, first, that evidence of prior criminal acts is more likely than any other evidence to be unfairly prejudicial to a defendant. *See Williams v. State*, 2004 WY 117, ¶ 8, 99 P.3d 432, 436 (Wyo.2004). Second, the appellant alleges that the evidence admitted was not the same as the evidence proferred. Specifically, the appellant notes that only one of the State's witnesses identified the appellant as being the burglar in part by describing the burglar's coat as being identical to the one allegedly stolen when the appellant was terminated. Other Goodwill employee witnesses identified the person in the surveillance video as being the appellant by recognizing her hair style, her stocking cap, her clothing, and her boots, and by recognizing the coat as one she customarily wore, rather than the one allegedly stolen.

[¶ 10] We cannot agree that the district court abused its discretion in admitting this uncharged misconduct evidence. The court performed an exhaustive pre-trial analysis of the evidence, applied the appropriate test, limited its admissibility to prove particular matters, and limited the extent to which the State could emphasize the alleged theft underlying the termination. Under the particular facts of this case, the alleged theft of the coat, the resultant termination, and the alleged threat of retaliation, were especially probative of motive and identity, and the district court reasonably could have concluded that the evidence was more probative than prejudicial.[1] Furthermore, the district court gave the jury the following limiting instruction in regard to the evidence:

THE COURT: Before we go there, counsel, I need to give the jury a limiting instruction. Now, you've heard some testimony about the facts and circumstances surrounding the firing of the defendant,

Lily Harris. In regard to that testimony I need to advise you it has a very limited purpose. You cannot use that to prove the character of the defendant. The State isn't trying to get that in for that purpose, or that the defendant acted in conformity with that.

It is admissible only for a very limited purpose, that is to show the motive at the time of this claimed burglary, that there might be a motive involved for burglarizing this business. It can only be used for that purpose. Now, whether or not you believe that this evidence shows that such a motive was proven is for you solely to determine. That is your call to determine whether or not this evidence of firing and circumstances surrounding it points to motive for this claimed burglary. Thank you.

Clearly, this instruction limited the jury's permissible use of the evidence even beyond the court's pretrial order. As instructed, the jury could only consider the evidence to such extent that it might prove that the appellant had a motive to burglarize the Goodwill store. This may be a distinction without a difference, however, inasmuch as proof of motive generally is intended to prove identity. *Mitchell v. State*, 865 P.2d 591, 596 (Wyo.1993). In any event, the jury was given this limiting instruction, as required by *Gleason*, and we presume that juries follow the court's instructions. *Brown v. State*, 953 P.2d 1170, 1177 (Wyo.1998); *Ramirez v. State*, 739 P.2d 1214, 1220 (Wyo.1987).

### *Whether prosecutorial misconduct occurred when the prosecutor misstated the evidence in the State's proffer of the uncharged misconduct evidence?*

[¶ 11] This allegation is a follow-up to the prior allegation. The appellant contends that the prosecutor misled the district court during the motion hearing by proffering that the uncharged misconduct evidence would help identify the appellant as the burglar by showing that the burglar was wearing the coat allegedly taken by the appellant when she was fired. The appellant finds this proffer to have been misleading and, there-

---

1. Any prejudice inherent in this evidence was also lessened by the fact that several testifying Goodwill employee witnesses specifically recognized and identified the appellant as the burglar.

fore, prosecutorial misconduct, because as it turned out at trial, only one of the State's witnesses identified the appellant as the burglar based upon that coat.

[¶ 12] Where there has been an objection at trial, we review claims of prosecutorial misconduct under a harmless error standard. *Condra v. State*, 2004 WY 131, ¶ 7, 100 P.3d 386, 389 (Wyo.2004). Both W.R.Cr.P. 52(a) and W.R.A.P. 9.04 provide that "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded[.]" Where there has not been an objection at trial, we review claims of prosecutorial misconduct under a plain error standard. *Id.*, 2004 WY 131, ¶ 6, 100 P.3d at 389. Fundamentally, both W.R.Cr.P. 52(b) and W.R.A.P. 9.05 simply allow errors that affect substantial rights to be raised on appeal, even though not raised below. Under either standard,

> [a]n error is harmful if there is a reasonable possibility that the verdict might have been more favorable to the defendant if the error had never occurred. To demonstrate harmful error, the defendant must show prejudice under "circumstances which manifest inherent unfairness and injustice or conduct which offends the public sense of fair play."

*Id.*, 2004 WY 131, ¶ 7, 100 P.3d at 389, quoting *Dysthe v. State*, 2003 WY 20, ¶ 10, 63 P.3d 875, 881 (Wyo.2003). To obtain plain error review, the appellant must show (1) the record is clear as to the alleged error; (2) a clear and unequivocal rule of law was transgressed; and (3) the appellant suffered material prejudice to a substantial right. *Id.*, 2004 WY 131, ¶ 6, 100 P.3d at 389.

[¶ 13] The appellant did not object at trial on the ground that the testimony did not match the proffer, so we review this issue under the plain error standard. While we may be able to say that the record is clear as to the alleged misconduct, we do so only because there are transcripts of both the motion hearing and the trial, allowing comparison of the proffer and the actual testimony. We cannot say, however, that the appellant has proven the transgression of a clear and unequivocal rule of law. The State's proffer was repeatedly interrupted by specif-

ic questions from the district court, which questions, in turn, led the prosecutor to attempt to limit the proffer to meet the court's concerns. The gist of the proffer that evolved was that evidence of the uncharged misconduct—the alleged theft and termination—was probative of both motive and identity. While the trial testimony may have turned out to be less than what the State had expected, there is no indication that the State intentionally misrepresented what the testimony would be. Admittedly, only one of the Goodwill employees identified the appellant as the burglar on the basis of the suspect coat. But the import of all the testimony about the uncharged misconduct was "as advertised"; that is, it all tended to prove that the appellant had the motive to commit the burglary, and it helped to identify her as the burglar. The appellant has failed to prove prosecutorial misconduct in this instance.

*Whether prosecutorial misconduct occurred when the prosecutor argued in rebuttal that the jury should ignore the State's burden of proof and should not penalize the community if the State had not met its burden of proof?*

[¶ 14] Our standard of review for claims of prosecutorial misconduct in closing argument is well established:

> In reviewing a claim of prosecutorial misconduct in closing argument, the court looks at the entire record to determine whether the defendant's case was so prejudiced by the improper comments as to result in the denial of a fair trial. *Capshaw v. State*, 10 P.3d 560, 567 (Wyo. 2000); *Metzger v. State*, 4 P.3d 901, 910 (Wyo.2000). The challenged comments are judged in the context of the prosecutor's entire argument, considering the context of the statements and comparing them with the evidence produced at the trial. *Helm v. State*, 1 P.3d 635, 639 (Wyo.2000).
>
> ... When an objection is launched to a statement made in closing argument, we defer to the trial court's ruling in the absence of a clear or patent abuse of discretion. *Gayler v. State*, 957 P.2d 855, 860 (Wyo.1998). Even then, reversal is not warranted unless a reasonable

probability exists, absent the error, that the appellant may have enjoyed a more favorable verdict. *Gayler,* [957 P.2d] at 860. *See also Metzger,* 4 P.3d at 910....

[When the defendant did not object at trial], we review his claims by applying the plain error standard. *Lane v. State,* 12 P.3d 1057, 1064 (Wyo.2000). To demonstrate plain error, [the appellant] "must show that the record clearly shows an error that transgressed a clear and unequivocal rule of law which adversely affected a substantial right." *Taylor v. State,* 2001 WY 13, ¶ 16, 17 P.3d 715, [721] (Wyo.2001). Reversal of a conviction on the basis of prosecutorial misconduct, which was not challenged in the trial court, is appropriate only when there is "a substantial risk of a miscarriage of justice." *Capshaw,* 10 P.3d at 567 (quoting *Dice v. State,* 825 P.2d 379, 384 (Wyo.1992)).

*Burton v. State,* 2002 WY 71, ¶¶ 11–13, 46 P.3d 309, 313–14 (Wyo.2002). There was no trial objection in the instant case, so plain error analysis is appropriate.

*Gleason,* 2002 WY 161, ¶ 35, 57 P.3d at 344–45. "We are reluctant to find plain error in a closing argument 'lest the trial court becomes required to control argument because opposing counsel does not object.'" *Marshall v. State,* 2005 WY 164, ¶ 14, 125 P.3d 269, 275 (Wyo.2005) (quoting *Lafond v. State,* 2004 WY 51, ¶ 35, 89 P.3d 324, 336 (Wyo. 2004)).

[¶ 15]   The appellant did not object at trial to the State's rebuttal closing argument. On appeal, however, she contends that the following passage from that argument (1) diluted the State's burden of proof; (2) argued facts not in evidence; (3) was not based on reasonable inferences from the evidence; (4) presented a community protection or community outrage argument; and (5) sought conviction for a reason other than the evidence:

Their stories don't add up, folks, especially in light of common sense. When I was preparing this case I had a discussion with an individual who was a prior juror. She said that in her jury service it was a drug case. The defendant was charged with three counts of selling drugs. I said, Well, did you convict? She said, We con-

victed on two out of three. I said, Well, what about the third? She said, Well, we knew that he did it. I was like, Why didn't you convict then? And she said, Well, we just didn't think that the State did enough or law enforcement did enough. I said, Well, okay.

Folks, don't penalize the State of Wyoming for what I have or haven't done. Don't penalize the State of Wyoming, don't penalize this community for what Detective Dafoe has or has not done. I submit to you if you know the defendant did it, then the State has proven the case beyond a reasonable doubt. Look at everything, all of it, what the State did, what Jay said, what the defendant said. I think there's only one reasonable and logical conclusion. I ask you to use your common sense and to find the defendant guilty of burglary. Thank you all very much.

[¶ 16]   This rebuttal argument is clearly reflected in the record, so the first requirement of plain error analysis has been met. Next, we must ask whether the prosecutor's statements violated a clear and unequivocal rule of law. For purposes of this discussion, we will assume that all five of the appellant's contentions are based upon what can be considered to be clear and unequivocal rules of law. We cannot assume, however, and we do not find, that the statements clearly violated any of those rules of law.

[¶ 17]   The prosecutor's statements can be divided into two parts: (1) a story about a jury that, despite knowing a defendant "did it," acquitted him because the State did not "do enough;" and (2) a plea to this jury not to acquit the appellant, if it "knows" she "did it," just because the jury thinks the prosecutor or the investigator did not "do enough." The appellant's first contention is that these statements "diluted [the] burden of proof." It is, of course, axiomatic that the State bears the burden of proof in a criminal case, and that the prosecutor may not, during argument, attempt to shift that burden to the defendant. *White v. State,* 2003 WY 163, ¶ 24, 80 P.3d 642, 653 (Wyo.2003); *Lane v. State,* 12 P.3d 1057, 1066 (Wyo.2000). We do not see that to be the case here. Rather, the essence of the prosecutor's statement was

that, if the jury was convinced by the evidence that the appellant was guilty, it should not acquit him on the theory that the State could have presented more evidence.

[¶ 18] Furthermore, when this portion of the State's closing argument is read in the context of the arguments presented by both sides, and in the context of the entire trial, it appears that the appellant "opened the door" to a discussion of the quality and extent of the investigation. *See Fortner v. State*, 835 P.2d 1155, 1158 (Wyo.1992) (appellant opened the door to prosecutor's comments regarding failure to call witnesses). The major focus of defense counsel's questioning of the State's investigator, and of defense counsel's closing argument, was upon what the investigator had not done. The prosecutor's statement is little more than an attempt to re-focus the jury's attention upon the evidence that was presented. We do not perceive this to be a case where the prosecutor, by saying "if you know he did it," attempted to define the State's burden of proof as anything less than "beyond a reasonable doubt." *See Seymore v. State*, 2007 WY 32, ¶ 18, 152 P.3d 401, 408 (Wyo.2007) (no instruction defining "reasonable doubt" needed because the term is self explanatory); *Claussen v. State*, 21 Wyo. 505, 133 P. 1055, 1056 (1913) (no definition of "reasonable doubt" would convey any clearer idea than the term itself).

[¶ 19] We will give short shrift to the balance of the appellant's contentions because she has failed to develop them much beyond the accusatory stage, and because we do not find that the State argued facts not in evidence, that the State's argument was not based on reasonable inferences from the evidence, that the State presented a community protection or community outrage argument, or that the State sought conviction for a reason other than the evidence. It is not enough for the appellant to make these allegations. She must follow up the allegations with concrete examples of how these rules of law were violated. For instance, what facts not in evidence did the State argue? That some other jury had reached a not guilty verdict based on an expectation of more evidence? The purpose of closing argument is to allow counsel, including the prosecutor, to offer ways for the jury to view the evidence, and to draw reasonable inferences therefrom. *Belden v. State*, 2003 WY 89, ¶ 48, 73 P.3d 1041, 1089 (Wyo.2003); *Phillips v. State*, 835 P.2d 1062, 1073 (Wyo.1992). There are innumerable ways for counsel to approach closing argument, including comparison by "storytelling." Where there has been no trial objection, and where the trial court has not exercised its discretion to limit the argument, we will not interject ourselves and reverse a conviction without a more substantial showing of error and prejudice than has been provided in this case.

[¶ 20] The same is true as to the remaining allegations—that the prosecutor made a community outrage argument and sought conviction for a reason other than the evidence. The rebuttal argument in this case simply does not approach the level of "join the war on crime/send a message to criminals" argument that we condemned in *Gayler v. State*, 957 P.2d 855, 860–62 (Wyo.1998). *See also Burton v. State*, 2002 WY 71, ¶ 15, 46 P.3d 309, 314 (Wyo.2002), and *Metzger v. State*, 4 P.3d 901, 911 (Wyo.2000). Neither does it ask the jury to convict the appellant for some reason other than the evidence. As we stated above, the essence of the prosecutor's argument was that there was sufficient evidence for the jury to convict the appellant, and the jury should not acquit just because there might have been additional evidence that could have been presented.

## CONCLUSION

[¶ 21] The uncharged misconduct evidence admitted in this case was subjected to appropriate pre-trial analysis, was admitted for proper purposes, and has not been shown to have been more unfairly prejudicial than probative. The prosecutor was not guilty of prosecutorial misconduct either in proffering the uncharged misconduct evidence, or in giving its rebuttal argument.

[¶ 22] We affirm.

HILL, Justice, specially concurring, with whom KITE, Justice, joins.

[¶ 23] I submit this special concurrence because it is my conviction that the argument

made by the prosecutor and quoted in ¶ 15 of the opinion was improper and it should be positively identified as such. Whether "the story" used by the prosecutor was truly anecdotal, or if it was in the nature of a parable, or if it was a part of the lore of prosecutorial experience, it was directly aimed at diluting and undermining both the prosecution's burden to prove guilt beyond a reasonable doubt and the defendant's right to the presumption of innocence. Therefore, I would prefer that the Court identify it as erroneous. Because it is reviewed under the plain error standard, my conclusion would be that, although the record clearly presents the incident alleged to be error, and that the incident violated a clear and unequivocal rule of law, in a clear and obvious, not merely arguable way, Harris was not able to demonstrate that the error denied her a substantial right resulting in material prejudice to her. E.g., *Lemus v. State,* 2007 WY 111, ¶¶ 38–41, 162 P.3d 497, 507–8 (Wyo.2007). In addition, I am uncomfortable in justifying such an error, even in part, on the basis that the defense "opened the door" to it, because it cross-examined witnesses, and argued to the jury, that the evidence is not sufficient to meet the "beyond a reasonable doubt" standard. The result I prefer would have the salutary effect of deterring, rather than encouraging, the further use of this particular "story" in future cases, alerting defense counsel that such argument is error to which they should object, as well as in guiding the district courts in the always-difficult task of gleaning what this Court views as error in the context of closing argument.