2011 WY 138

**Thomas Allen STASTNY, Appellant (Defendant),**

**v.**

**The STATE of Wyoming, Appellee (Plaintiff).**

No. S–10–0206.

Supreme Court of Wyoming.

Sept. 29, 2011.

Representing Appellant: Gregory J. Blenkinsop, Senior Assistant Public Defender; Elisabeth M.W. Trefonas, Assistant Public Defender. Argument by Ms. Trefonas.

Representing Appellee: Gregory A. Phillips, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Leda M. Pojman, Senior Assistant Attorney General. Argument by Ms. Pojman.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

VOIGT, Justice.

[¶ 1] The appellant was convicted of one count of sexual abuse of a minor and one count of attempted sexual abuse of a minor. In this appeal from those convictions, the appellant challenges the district court's admission of evidence of a prior conviction, and he accuses the prosecutor of committing misconduct during closing argument. Finally, he relies upon the cumulative error doctrine. Finding no error, we affirm.

## ISSUES

[¶ 2] 1. Does the doctrine of invited error bar the appellant from raising in this appeal issues concerning the admission of evidence of his prior conviction?

2. Did plain error occur as a result of prosecutorial misconduct during closing argument?

3. Does the doctrine of cumulative error require reversal of the appellant's convictions?

## FACTS

[¶ 3] The sordid details of the encounter between the appellant and his victim are not particularly relevant to our analysis of the appellate issues. Briefly stated, the State produced evidence that the appellant manually stroked the penis of a twelve-year-old boy and attempted to insert a finger into the boy's anus. Further, the State proved that DNA consistent with that of the appellant was found on a swab taken from the boy's penis.

## DISCUSSION

### Does the doctrine of invited error bar the appellant from raising in this appeal issues concerning the admission of evidence of his prior conviction?

[¶ 4] Where an objection has been made, we review a district court's decision as to the admissibility of evidence for abuse of discretion. *Majors v. State,* 2011 WY 63, ¶ 24, 252 P.3d 435, 441 (Wyo.2011). Where "no objection is lodged in the trial court to the evidence challenged on appeal, we apply our plain error standard of review." *Roden v. State,* 2010 WY 11, ¶ 9, 225 P.3d 497, 500 (Wyo.2010). These standards of review are inapplicable, however, where the appellant has not only failed to object at trial, but has affirmatively acted to introduce or allow introduction of the evidence. "[T]he doctrine of invited error prohibits a party from raising error on appeal that was induced by the party's own actions." *Martin v. State,* 2007 WY 76, ¶ 34, 157 P.3d 923, 930–31 (Wyo. 2007); *see also Bromley v. State,* 2007 WY 20, ¶ 35, 150 P.3d 1202, 1212 (Wyo.2007) and *Butcher v. State,* 2005 WY 146, ¶ 29, 123 P.3d 543, 552 (Wyo.2005). The invited error doctrine applies in this case.

The appellant filed a pretrial motion seeking disclosure by the State of any evidence it intended to introduce under W.R.E. 404(b) or under W.R.E. 609. In a nutshell, W.R.E. 404(b) allows admission of uncharged misconduct evidence, under limited circumstances, if such evidence is probative of such things as motive or intent. W.R.E. 609, on the other hand, allows admission of evidence of prior criminal convictions, under limited circumstances, for the purpose of impeaching the credibility of a witness. The State's response to the appellant's motion indicated the State's intent to introduce evidence that the appellant had a prior conviction in Iowa for

"lascivious acts with a child." While analyzing the evidence primarily under W.R.E. 404(b), the State reserved the right to argue for its admission under W.R.E. 609.

■ The district court heard the motion during a pretrial conference several months before trial. In the midst of a brief generalized discussion concerning what the district court characterized as "the 404(b) issue," the following colloquy occurred:

[PROSECUTOR]:.... Probably goes more to 609.

THE COURT: All right. [Defense Counsel], what would you like me to know?

[DEFENSE COUNSEL]: Your Honor, certainly if [the appellant] intends to take the stand within the last ten years of him being released—I believe it was 2001 from custody—I would think that information should come in.

However, without [the appellant] taking the stand, I think this is exactly the type of material that we would hope to keep out. I think it's highly prejudicial. I think without [the appellant's] testimony, based on the evidence the State may introduce, I think there's a good possibility [the appellant] could be convicted, based almost wholly on this charge itself.

. . . .

THE COURT: Okay. I'll take this one under advisement. . . .

■ The chronology of events and non-events that followed leads us to the conclusion that the appellant is barred from raising this issue on appeal. To begin with, the district court never ruled upon the matter, and it does not appear from the record that the appellant ever sought such a ruling. Further, the State did not mention the prior conviction during its opening statement or during the examination of any of its witnesses, and rested its case with no mention of the prior conviction. The appellant chose to testify, however, and *during direct examination by his own counsel*, the following exchange occurred:

Q. Now, I want to ask you this, [appellant]. Are you a convicted felon?

A. Yes, I am.

Q. And what were you convicted for?

A. Lascivious acts with a minor.

Q. And when was that?

A. '98.

■ The State cross-examined the appellant, with the prosecutor's first two questions being as follows:

Q. Now, in response to [defense counsel's] question, you have been convicted of a felony, haven't you?

A. Yes.

Q. And that felony I believe you said was lascivious acts with a minor.

A. Yes.

■ The Iowa conviction is not again mentioned in the record until, after a conference concerning jury instructions, the playing of a tape recording and a limiting instruction not related to this issue, the following discussion was had in chambers:

[PROSECUTOR]: Your Honor, in the defendant's direct counsel elicited the fact that [the appellant] had been convicted of a prior felony. He stated that felony conviction was in 1998, and while that's correct, I think it is still a qualifying offense under Rule 609 because the information that we got from—I believe from Iowa indicates that his discharge and end of sentence was March 6, 2001, so it's well within the ten years. And I'd like to for the record tender the copies that we have that were shared with defense.

THE COURT: All right. Very good.

[Defense Counsel], anything you want me to know about that?

[DEFENSE COUNSEL]: Excuse me. It's just for the purposes of the court file, not evidence.

[PROSECUTOR]: That's correct. I'm not offering that for the record. It's just the nature of a general proffer to clear up any confusion about whether or not it was proper to receive that 609 testimony.

THE COURT: The effect in timing of 609, yes. 609 pertains to a number of different touchstones. I'll include that in the court file.

All right. So take a look at the limiting instruction. We'll have everybody use the facilities.

[Defense Counsel], anything else?

[DEFENSE COUNSEL]: Will we be discussing the limiting instruction when we return?

[¶ 10] It is significant in regard to this appeal that defense counsel did not use this opportunity to place on the record any objection to admission of evidence of the prior conviction, and he did not ask for an instruction limiting its use to its intended purposes under W.R.E. 609.[1] Furthermore, the State did not mention the prior conviction in its initial closing argument, nor in its rebuttal closing, even after defense counsel raised the issue of credibility. Apparently, defense counsel concluded that the district court was going to admit the evidence of the prior conviction, so counsel decided to take the sting out of that bite by asking the appellant about it before the State had a chance to do so. That is not an uncommon tactic. *See, e.g., Ramirez v. State,* 994 P.2d 970, 973 (Wyo. 2000) and *Gentry v. State,* 806 P.2d 1269, 1271–72 (Wyo.1991). Whether or not it was error for that evidence to be admitted, its admission was not just invited by defense counsel, it was accomplished by defense counsel.[2]

### Did plain error occur as a result of prosecutorial misconduct during closing argument?

[¶ 11] There was no trial objection to the State's closing argument, so we review this contention under our plain error standard. *Dysthe v. State,* 2003 WY 20, ¶ 23, 63 P.3d 875, 884 (Wyo.2003). Succinctly stated,

to show plain error the appellant must prove that the record clearly reveals a transgression of an unequivocal rule of law, resulting in the denial of a substantial right, to the appellant's material prejudice. *Id.* We evaluate the prosecutor's allegedly offending remarks in the context of the entire argument, and we review "the entire record to determine whether the [appellant's] case was so prejudiced by the improper comments as to result in the denial of a fair trial." *Harris v. State,* 2008 WY 23, ¶ 14, 177 P.3d 1166, 1170 (Wyo.2008) (quoting *Gleason v. State,* 2002 WY 161, ¶ 35, 57 P.3d 332, 344 (Wyo.2002)). "We are reluctant to find plain error in a closing argument 'lest the trial court becomes required to control argument because opposing counsel does not object.'" *Id.* at 1171 (quoting *Marshall v. State,* 2005 WY 164, ¶ 14, 125 P.3d 269, 275 (Wyo.2005)). In the instant case, the appellant alleges that the prosecutor intentionally misstated the evidence, which is, of course, improper. *See, e.g., Wilks v. State,* 2002 WY 100, ¶ 27, 49 P.3d 975, 987 (Wyo.2002).

[¶ 12] The alleged crime in this case took place in the early morning hours on August 29, 2009. When allegations of the appellant's alleged misconduct with the victim were made known, the appellant was forcefully ejected from the house and beaten by several men who were present. Police officers responded to reports of the beating, and the appellant spoke briefly with them before he was taken to the hospital. When asked why he was assaulted, the appellant replied that "they were accusing me of touching these boys, which I didn't do."

---

1. As noted previously, counsel's mention of a limiting instruction was in regard to another matter.

2. This scenario raises an interesting question. The district court and the parties appear to have determined that admissibility of this prior conviction was governed by W.R.E. 609, rather than W.R.E. 404(b). *See Robinson v. State,* 716 P.2d 364, 368 (Wyo.1986) (once defendant becomes witness, admissibility of prior conviction evidence governed by W.R.E. 609). However, the district court never ruled whether the evidence was admissible under W.R.E. 609, and the evidence was not offered at trial by the State for the

limited purpose of W.R.E. 609—impeaching the credibility of the witness—or for any purpose. Instead, the evidence was obtained from the appellant by his own counsel's questioning during direct examination, and defense counsel did not ask for a limiting instruction, whereby the district court would have instructed the jury to consider the evidence for its limited purpose. *See* W.R.E. 105. In other words, the prior conviction evidence went to the jury in an unlimited capacity, and could have been used by the jury as direct evidence of guilt. The interesting question is whether we should even be treating this as W.R.E. 609 evidence at this point.

[¶ 13] The officers continued to investigate the matter and at some point during that same day, they obtained a search warrant for the purpose of obtaining a "sexual assault kit" body search of the appellant. They picked up the appellant at about 10:00 p.m. and took him to the local hospital for that purpose, where the requisite evidence was collected by a nurse. At trial, the appellant testified as follows in that regard:

Q. Okay. Where did you give a statement to police at?

A. Well, I kind of give them a statement when they came over the first time. I was kind of out of it. They come over and was saying, you know—because my roommate called the cops and said, Why aren't these guys arrested for beating the crap out of him? There's a lot of stuff going on at this house you guys need to look at. They said, We're looking into it, you know.

And then the last statement I gave to them was probably when they come and arrested me like at midnight or something like that. They told me I needed to come in and do a rape kit or whatever, sexual kit.

Q. Do you do that?

A. Yes.

Q. And did you do it voluntarily?

A. Oh, yes.

Q. What happened after that?

A. After that—they told me I wasn't going to be arrested, but they handcuffed me anyway. Told me it was for my safety but after—after all of the tests were done, then that's when they said I had to arrest you. They said I was arrested for first and second-degree sexual assault.

[¶ 14] The appellant further testified at trial that, during the night of the incident, he had been drinking heavily and had passed out in the victim's room. He testified that he twice briefly became conscious, once noticing "a brown head in my lap," and once noticing "somebody was either sticking their dick or finger in my mouth." During closing argument, the prosecutor commented as follows regarding the appellant's version of what had happened, with the highlighted portion being that to which objection is now made:

Now, the defendant has said he didn't do it, and his version of the facts would state to you that he was the one who was the victim. He was the one who was assaulted by a 12–year–old boy. That's the defendant's version; that somewhere around four to five o'clock in the morning he passed out and he was sexually assaulted by [the victim] sticking his penis in his mouth.... And that he had a flash of consciousness that he just knew that someone was doing that, he didn't know who, but he knew someone was doing that. He also knew at some point somebody had their head in his crotch.

And that was what you heard the defendant say on the stand.

The thing that's interesting about this is that this is so situational. You heard the testimony from [the victim] about defendant licking his hand and putting it on his penis. And you know that DNA was—a DNA test was taken later that day, and you've heard testimony that [the victim] didn't shower, he didn't change his clothes or pants, and so that results in the test.

And so we are faced at this point with one really absolute rock-solid fact, and that is the report of a crime lab. The report of the crime lab is that they find DNA that is not from [the victim] on this 12–year–old boy's penis. It's from another source.

It is, as they say, foreign to the provider. It is not his, and the question then becomes, well, whose is it? Now, remember that they've taken [the victim's] DNA, and that sample is done and it's boxed and it's separate and it's held separately and it's sealed. Later that same night, or actually earlier the next morning on the 30th, they go ahead and get [the appellant], and they go take another kit and they take a test of [the appellant]. They do a sexual assault kit, and they do a blood reference. They said they do a blood spot, and that becomes [the appellant's] reference. [The appellant's] reference is then sent. These are kept separate. You've heard [the laboratory technician] talk about how they do that and how careful they are and why they do that and how carefully handled they are, kept completely separate, and the

controls are used to make sure that there's no possibility of contamination.

And then they run that test. And after that test is run, then they see if there's a comparison. And what do you know? They find in their comparison that the DNA sample that they have obtained from [the victim's] penis is consistent with the defendant's DNA.

Folks, it didn't come there from the DNA fairy. It came there one of two ways. It either came there as [the victim] told you, after he licked his hand and put it on his penis, or it came there as the defendant tells you, because he was sexually assaulted and someone stuck their penis—actually [the victim] stuck his penis in the defendant's mouth.

That essential, incontrovertible fact, is the fact that you take with you into the jury room.

The defendant has testified, and we would suggest a good deal of his testimony is essentially self-serving. *The issue about how do you explain the findings on the laboratory report that come out on January 25th are really the reason you hear what you've heard today from the defendant, because there's got to be some reason—he knows there's some—there's got to be some explanation because nobody believes in the DNA fairy.*

Once that crime lab report comes out, he needs a way to explain it. *And you heard his explanation;* that he was so drunk that he really didn't remember this blackout hour, the missing hour.

[¶ 15] The appellant was formally interviewed by the police on September 1, 2009, just before going to a bond hearing. During that interview, he told the police essentially the same version of events to which he testified at trial. The crux of the appellant's present argument is that the prosecutor misstated the evidence in the above passage, or at least asked the jury to make an improper inference based on that evidence, by alleging that the appellant fabricated his version of the events after he learned of the DNA results, when, in fact, he had told the same story to the police officers on September 1.

[¶ 16] This is precisely the type of case in which we are reluctant to find plain error in a prosecutor's closing argument. The questioned statement is not such a clear violation of a rule of law that we can say the second element of plain error analysis is met. The evidence was not just that the appellant had learned of the results of the "sexual assault kit"; the evidence also was that the appellant was aware from the start that the "sexual assault kit" was obtained for testing. In other words, his need to explain away any results from those tests arose when the samples were collected, not just when the test results were reported. Beyond that, we cannot say that the appellant was unfairly prejudiced by the highlighted language. The jury knew from the entirety of the testimony that the appellant's trial testimony was consistent with his statement to the police on September 1. The jury knew the DNA results, and the jury heard from, and could judge the credibility of, both the appellant and the victim as to how the appellant's DNA was where it was. In the context of the entire trial, we do not conclude that these isolated remarks were so prejudicial as to deny the appellant a fair trial.

### Does the doctrine of cumulative error require reversal of the appellant's convictions?

[¶ 17] There being no error, there is no cumulative error. *See, e.g., Rolle v. State,* 2010 WY 100, ¶ 46, 236 P.3d 259, 277 (Wyo. 2010).

### CONCLUSION

[¶ 18] The admission of evidence of the appellant's prior felony conviction, if error at all, was invited error, and prosecutorial misconduct did not occur during closing argument, so, therefore, we affirm.