# NO. 12-09-00387-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JAMES LARRY PARNELL,* *APPELLANT* | § | *APPEAL FROM THE* |
| *V.* | § | *COUNTY COURT AT LAW NO. 1 OF* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *ANGELINA COUNTY, TEXAS* |

## MEMORANDUM OPINION

James Larry Parnell appeals his conviction for terroristic threat. In two issues, Appellant argues that the evidence is legally and factually insufficient to support his conviction. We reverse and render.

## BACKGROUND

Appellant was charged by information with the offense of terroristic threat. Appellant pleaded not guilty. After a bench trial on guilt, the trial court found Appellant guilty of the charged offense. The trial court subsequently assessed Appellant's punishment at confinement for 365 days and a $1,000 fine, probated for eighteen months. This appeal followed.

## LEGAL SUFFICIENCY

In his first issue, Appellant asserts that the evidence is legally insufficient to support his conviction. Specifically, Appellant claims that the evidence is legally insufficient to support the elements of identity and intent.

### Standard of Review

The Due Process Clause of the United States Constitution requires that a criminal conviction be supported by a rational trier of fact's findings that the accused is guilty of every essential element of a crime beyond a reasonable doubt. *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009) (citing *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). This due process guarantee is safeguarded

when a court reviews the legal sufficiency of the evidence. *Laster*, 275 S.W.3d at 517. A successful legal sufficiency challenge will result in rendition of an acquittal by the reviewing court. *See Tibbs v. Florida*, 457 U.S. 31, 41-42, 102 S. Ct. 2211, 2217-18, 72 L. Ed. 2d 652 (1982).

"When conducting a legal sufficiency review, a court must ask whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt–not whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." *Laster*, 275 S.W.3d at 517 (internal quotation marks omitted). In doing so, appellate courts should assess all of the evidence in the light most favorable to the prosecution. *Id.* "[T]his same standard applies equally to circumstantial and direct evidence." *Id.* at 517-18.

During such a review, an appellate court must not usurp the role of the factfinder. *Id.* at 517. "Appellate courts are ill-equipped to weigh the evidence; unlike the factfinder–who can observe facial expressions and hear voice inflections first-hand–an appellate court is limited to the cold record." *Id.* We must bear in mind that the factfinder is the exclusive judge of the credibility of witnesses and of the weight to be given their testimony. *See Barnes v. State*, 876 S.W.2d 316, 321 (Tex. Crim. App. 1994). The factfinder is entitled to draw reasonable inferences from the evidence. *See Dudley v. State*, 205 S.W.3d 82, 86-87 (Tex. App.—Tyler 2006, no pet.). Likewise, the reconciliation of conflicts in the evidence is within the exclusive province of the factfinder. *See Losada v. State*, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986).

## Discussion

In order to commit the offense of terroristic threat, the accused must have the specific intent to place a person in fear of imminent serious bodily injury. TEX. PENAL CODE ANN. § 22.07(a)(2) (Vernon Supp. 2009); *Dues v. State*, 634 S.W.2d 304, 305 (Tex. Crim. App. 1982). Here, in light of the charging instrument, it was the State's burden to present evidence that "JAMES LARRY PARNELL . . . THREATENED TO ASSAULT DANNY MARCUS with intent . . . to place . . . DANNY MARCUS . . . in fear of imminent serious bodily injury." *See* TEX. PENAL CODE ANN. § 22.07(a)(2); *Dues*, 634 S.W.2d at 305. Appellant asserts that the evidence does not sufficiently demonstrate that he had the requisite intent at the time he threatened the victim.

The sole witness at the guilt phase of the trial was Deputy Danny Marcus of the Angelina County Sheriff's Department. He testified that he was a party to a telephone

conversation between himself and Appellant. He stated that he identified himself as a police officer. Nonetheless, Appellant "was screaming and hollering" and twice told Deputy Marcus that he would "kick my police officer's ass." Appellant then informed Deputy Marcus that "if you will come meet me, I will take care of you." Deputy Marcus stated that it was his opinion that Appellant was trying to intimidate him so that he would not further pursue another offense allegedly committed by Appellant.

Deputy Marcus testified that, at the time of the conversation, he did not know Appellant's location. Likewise, Deputy Marcus did not know Appellant, and had not previously met or spoken with Appellant. He admitted that Appellant did not "come and meet [him] at any point and assault [him] or take any action."

The intent required to commit the offense of terroristic threat can be inferred from the acts, words, and conduct of the accused. *Dues*, 634 S.W.2d at 305. The accused's intent cannot be determined merely from what the victim thought at the time of the offense. *Id.* "Indeed, for this offense to be completed it is not necessary that the victim or anyone else was actually placed in fear of imminent serious bodily injury." *Id.* Additionally, it is immaterial to the offense whether the accused had the capability or the intention to carry out his threat. *Id.* All that is necessary to complete the offense is that the accused, by his threat, sought as a desired reaction to place a person in fear of imminent serious bodily injury. *Id.* at 306.

A threatened injury is "imminent" if it is "near at hand" or "on the verge of happening." *See Nelson v. State*, No. 12-00-00381-CR, 2002 WL 452111, at *3 (Tex. App.—Tyler Mar. 20, 2002, no pet.) (not designated for publication) (citing *Devine v. State*, 786 S.W.2d 268, 270 (Tex. Crim. App. 1989)); *see also In re T.T.*, No. 12-06-00034-CV, 2006 WL 3313350, at *2 (Tex. App.—Tyler Nov. 15, 2006, no pet.) (mem. op.) ("Imminent means 'near at hand; mediate rather than immediate; close rather than touching; impending; on the point of happening; threatening; menacing; perilous.'"). Conditioning a threat of harm on the occurrence or nonoccurrence of a future event does not necessarily mean that the harmful consequences threatened are not imminent. *See Cook v. State*, 940 S.W.2d 344, 348 (Tex. App.—Amarillo 1997, pet. ref'd); *see also T.T.*, 2006 WL 3313350, at *2-3. Instead, we must look to the proximity of the threatened harm to the condition. *See T.T.*, 2006 WL 3313350, at *2; *see also Cook*, 940 S.W.2d at 348.

3

> For instance, it would be nonsensical to conclude that, if a person, while using and exhibiting a deadly weapon, said, "Don't move or I will shoot," or, "Give me the money or I will shoot," such statements are merely conditional and could not convey a threat of imminent bodily injury. . . . On the other hand, threatening to kill a police officer while the defendant was handcuffed would only constitute a threat of future harm which might occur after the defendant was released from jail, and [would] not present an "imminent" threat.

See *Tidwell v. State*, 187 S.W.3d 771, 774 (Tex. App.—Texarkana 2006, pet. stricken).

The Waco court of appeals has addressed a fact situation similar to the one at hand. In that case, the defendant, Bryant, approached a local county commissioner on a roadside during a road repair operation in the area. *Bryant v. State*, 905 S.W.2d 457, 457 (Tex. App.—Waco 1995, pet. ref'd). The county road in front of Bryant's home was in poor condition. *Id.* Bryant was "angry" because an ambulance, which had recently come to take Bryant's mother to the hospital after she suffered a heart attack, was delayed almost an hour due to the road's condition. *Id.* When the commissioner responded to Bryant's complaint with the comment, "I ain't no ambulance driver," Bryant "jumped out of his vehicle" and went towards the commissioner, who was seated in another vehicle. *Id.* at 458. Bryant stated to him that if he did not grade the road in front of Bryant's house, he was going to "kick [his] god damn ass." *Id.* The commissioner believed that Bryant was going to attack him and said that, during the confrontation, he was in fear of imminent serious bodily injury. *Id.* Members of the commissioner's road crew also witnessed the incident and testified that they believed Bryant was going to attack the commissioner at that time. *Id.* They described Bryant as yelling at the commissioner in a loud voice and pointing his finger in his face. *Id.*

Because of the procedural history of the case, the court of appeals considered whether the evidence was legally sufficient to support a finding of guilt under the following jury charge:

> NOW, THEREFORE, if you find and believe from the evidence beyond a reasonable doubt that [Bryant] . . . did then and there intentionally threaten to commit an offense involving violence to [the commissioner] namely, by stating to [him] that if [he] did not grade the road in front of [Bryant's] house that he was going to kick [his] god damn ass, with intent to place [the commissioner] in fear of imminent serious bodily injury, you will find [Bryant] guilty of Count Two of the Information herein as charged.

*Id.* In light of the jury charge, the court of appeals stated that there was no evidence from which the jury could rationally infer from Bryant's words, acts, or conduct that the

threatened harm was impending or in close proximity to the confrontation.[1] *Id.* at 460. "Restating Bryant's threat in the vernacular of the parties, as embodied in count two, Bryant's threat was this: 'I'm going to kick your god damn ass in the future if you don't [grade] my road in the future.'" *Id.* The court held that there was legally insufficient evidence that Bryant acted with the specific intent to place the commissioner in fear of imminent serious bodily injury. *Id.* at 459-60.

In the case at hand, Appellant, like Bryant, conditioned his threat to assault upon the occurrence of a future event. Specifically, Appellant coupled his threat of future assault with the invitation for the deputy to "come meet me." And, unlike Bryant, Appellant was not even personally present at the time he threatened Deputy Marcus. Considering Appellant's absence from the location, and the fact that he coupled his threat of future harm with an invitation to meet in the future, we hold that no rational trier of fact could have found the essential element of intent beyond a reasonable doubt. *See id.*; *cf.* ***Zorn v. State***, 222 S.W.3d 1, 3 (Tex. App.—Tyler 2002, pet. dism'd) (finding imminence in context of face-to-face unconditional threat). *But see* ***Reed v. State***, 733 S.W.2d 556, 558 n.4 (Tex. App.—Tyler 1986, pet. ref'd) (finding imminence in context of face-to-face conditional threat). Viewing the evidence in the light most favorable to the prosecution, we hold that the evidence is legally insufficient to support a finding of guilt. *See* ***Laster***, 275 S.W.3d at 517. Therefore, we sustain Appellant's first issue.[2]

---

[1] The jury had acquitted Bryant of another charge:

> NOW, THEREFORE, if you find and believe from the evidence beyond a reasonable doubt that [Bryant] . . . did then and there intentionally threaten to commit an offense involving violence to [the commissioner], namely, by stating to [him] that he was going to whip [his] god damn ass with intent to place [him] in fear of imminent serious bodily injury, then you will find [Bryant] guilty as to said Count One of the Information herein as charged.

> *Id.*

[2] We do not address Appellant's legal sufficiency challenge as to the question of identity. *See* TEX. R. APP. P. 47.1. Likewise, because our resolution of Appellant's first issue is dispositive, we do not consider Appellant's second issue. *See id.*

## DISPOSITION

We *reverse* the trial court's judgment and *render* a judgment of acquittal. *See Tibbs*, 457 U.S. at 41-42, 102 S. Ct. at 2217-18.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered June 30, 2010.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)